A. R. Stewart *v.* Harriet Hamilton *et al.*

. (*Nashville.*  December Term, 1924.)

1. **TRUSTS.** Postponement of vesting of estate, under will, held positive inhibition against invasion for maintenance of beneficiaries.

Direction in will that estate, to be divided among children, be vested in trustee until youngest child attained majority, *held* positive inhibition against invasion of *corpus* of estate by guardian for maintenance of children, especially in view of limitation over making enjoyment of property contingent, interest of any beneficiary who might die before youngest attained majority to pass to her children.  (*Post, pp.* 399-401.)

2. **TRUSTS.** Doctrine of imputed intention not available to take away fundamental rights under devise in trust.

Doctrine of imputed intention cannot avail to take away fundamental and substantial right under devise in trust, even though contingent, as doctrine concerns only method of management, and cannot authorize appropriation for one at expense of testator's bounty. (*Post, pp.* 399-401.)

Case cited and approved: Lenow v. Arrington, 111 Tenn., 736.

Cases cited and distinguished: Bennett v. Trust Co., 127 Tenn., 126; Weakley v. Barrow, 137 Tenn., 238.

*Headnotes 1. Trusts, 39 Cyc., p. 331; 2. Trusts, 39 Cyc., p. 317 (1926 Anno.).

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. John R. Aust, Chancellor.

R. T. SMITH, for Hagan.

CHAS. C. TRABUE, WALKER H. GILL and AVERY HANDLY, for Stewart.

THOS. G. WATKINS, for guardian *ad litem*.

MR. JUSTICE COOK delivered the opinion of the Court.

The cause is here for review upon *certiorari* to the court of civil appeals. The court reversed the decree of the chancellor and dismissed the amended and supplemental bill through which complainant sought to trench upon an estate devised to A. M. Hagan, trustee, for the benefit of complainant's wards, who are Harriet, Mary, and Margaret Hamilton. Their father, W. D. Hamilton, died September 26, 1919. Their mother died some time before the father.

By item 3 of W. D. Hamilton's will dated April 10, 1918, he appointed A. R. Stewart grandfather of his daughters their guardian. Mr. Stewart assumed the responsibility, took his granddaughters into his home, which was in Nashville at that time, and they have since then been objects of his care. Harriet and Mary, twins, were fourteen, and Margaret was twelve years old when their father died September 26, 1919. Upon his death $2,000, from a policy on the life of W. D. Hamilton went into the hands of A. R. Stewart, guardian.

March 26, 1920, the guardian filed the original bill to trench upon the insurance money for the maintenance of his wards. The bill recites that the guardian had expended $800 for the use of the children. This expendi-

ture was ratified by the court, and by subsequent decrees the insurance money was entirely exhausted. In the fall of 1920 Mr. Stewart moved to Columbia, S. C., carrying his wards with him. The family reside there in a rented house. The young ladies have been attending the public schools of the city.

It appears that for some years the trustee appointed by W. D. Hamilton's will has paid to the guardian the net income from the estate, which is about $750 a year. According to the report of the master under an order of reference it appears that $190 a month is necessary for the proper maintenance of the three young ladies.

February 3, 1923, the complainant filed an amended and supplemental bill setting forth that he had expended for the use of his wards $2,966.22, in excess of the net income from the trust estate and the $2,000 derived from the life insurance. He prayed a sale of the real estate to reimburse him for the expenditure and to provide additional funds for the maintenance and education of his wards through minority.

The real estate described in the bill, and which complainant would have the court subject to these charges, is that particular property disposed of by the will of W. D. Hamilton in the following manner:

"I hereby nominate and appoint my friend A. M. Hagan, in whom I repose especial trust and confidence, as executor of my estate and testamentary trustee, and I do hereby devise, will and bequeath to him as such executor and testamentary trustee all the property of which I may die possessed, both real, personal and mixed, to be held and disposed of by him as herein set forth."

Item 4 provides:

"I hereby direct and provide that my said estate will remain vested in the said A. M. Hagan, as executor and testamentary trustee, with all the powers above enumerated, until my youngest child living at the time, shall have attained the age of twenty-one years, at which time my estate shall be equally divided by agreement of the children, or failing such agreement, by appropriate proceedings, share and share alike; and in the event that, at such time any one of my children shall have died leaving issue, then its share shall go to said issue."

It is insisted for complainant that a court of chancery in the exercise of its extraordinary powers should do what the trust creator would have done had he foreseen the situation of his beneficiaries at this time, and that the judgment of the court of civil appeals should be reversed and the decree of the chancellor affirmed.

The will of W. D. Hamilton vested title to the property in A. M. Hagan to hold in trust until the youngest daughter attained the age of twenty-one years, then, and then only, it would vest in the three daughters if living, but, if any one of the three shall have died leaving issue, then her share would vest in her issue.

We are constrained to concur in the view expressed by the court of civil appeals that the direction in the will that the estate be vested in A. M. Hagan, testamentary trustee, until the youngest child attained the age of twenty-one is tantamount to a positive inhibition against invasion of the *corpus* of the estate for maintenance of the children. This view is strengthened by the limitation over in the will to the issue of either of the daughters, who may die before the date fixed for the determination of the trust. If one or more of the beneficiaries

die before the youngest attains twenty-one, either or both leaving children, such children would take under the will, and not by inheritance from their mother.

Courts cannot sustain the taking of property for the maintenance of a *cestui que trust* whose interest is contingent and may, upon the happening of the contingency, pass to the possession and enjoyment of a child or children not in existence. Such a possibility, though remote, is sufficient to forbid taking the property for the use of those who may never be entitled to it.

In *Bennett* v. *Trust Company,* 127 Tenn., 126, 153 S. W., 840, 46 L. R. A. (N. S.), 43, Ann. Cas., 1914A, 1045, the potential rights of contingent remaindermen offered no obstruction to an exercise of discretion by the court, acting *in loco parentis,* to provide for the exigency which the trustor could not foresee. In that case the trust fund belonged altogether to the beneficiary, whose right of enjoyment was only postponed until she reached the age of twenty-one years, and the court, in the exercise of its discretionary power, doing what it assumed the trustor would have done in the emergency, merely hastened the enjoyment of the estate under the doctrine of imputed intention. The doctrine of imputed intention concerns only the method of management, and may not be availed of to take away fundamental and substantial rights even of a contingent nature. The necessities of the present cannot be satisfied at the expense of some other object of the trustor's bounty.

In *Weakley* v. *Barrow,* 137 Tenn., 238, 192 S. W., 930, the court said:

"We are of opinion . . . that it was error to put to sale portions of the *corpus* of the trust estate for the

purpose of applying the proceeds immediately to the maintenance of the life tenant and children. The full power of the court to vary the settlor's scheme under the conditions appearing, which show an emergency in the lack of maintenance which the trust creator did not foresee, is to sell for improvement of the trust estate; or to sell for reinvestment in property which will produce a better income (as in *Lenow* v. *Arrington,* supra, 111 Tenn., p. 736, 39 S. W., 314); that property in its new form to be devoted to the same use and to go in the same direction and upon the same contingencies as that which is now a part of the trust estate. The proceeds cannot be distributed to or consumed by the life tenant or her children. That might result in a subversion of the purpose of John Shelby Barrow—a thing not to be justified by the doctrine of imputed change of intention on his part had he survived, which, as seen, concerns only the method of management and may not be availed of to take away fundamental and substantial rights, even of a contingent nature. The necessities of the life tenant cannot be thus satisfied at the expense of another object of the trust creator's bounty.''

The testator's children are not given this property absolutely and in all events, and to grant the relief prayed in the bill would be contrary to the clearly expressed intention of the testator and invade the rights of possible contingent remaindermen.

The decree of the court of civil appeals is in all respects affirmed.