178 So. 441

**FRAZER et al. v. FIRST NAT. BANK OF MOBILE.**

**1 Div. 973.**

Supreme Court of Alabama.

Jan. 20, 1938.

Faith & Holland and Mell A. Frazer, all of Mobile, for appellants.

Harry T. Smith & Caffey and Stevens, McCorvey, McLeod, Goode & Turner, all of Mobile, for appellee.

THOMAS, Justice.

The appeal is from a decree upon exceptions to the report of the register.

The assignments of error present questions for decision to the effect that the decree is infected with error (1) in sustaining the exceptions filed by the First National Bank of Mobile as a trustee to the report of the register allowing $48,376.72 for fees and compensation to the solicitors of record for joint services rendered to the minor Julian A. Watters, III, in the instant cause; (2) in overruling the exceptions to the report filed by the register of the solicitors for Julian A. Watters, III, "that there is in the hands of the First National Bank of Mobile as Trustee under the will of Julian A. Watters, Sr., $2,867.32, representing income due Julian A. Watters, Jr., as of June 11, 1935 and now due his estate, and which should be paid forthwith to Mrs. Madelyn Watters, as Executrix of the Will of Julian A. Watters, Jr."; and (3) in ordering "that fifteen hundred dollars ($1500.00) is a reasonable fee for Messrs. Harry T. Smith and Caffey for their services in the Circuit Court and in the Supreme Court."

The respective rulings will be discussed in the order indicated.

In such a proceeding this court takes judicial knowledge of, and will look to, necessary antecedent cases. Snodgrass v. Snodgrass, 217 Ala. 128, 115 So. 21; Cartwright v. Hughes, 226 Ala. 464, 147 So. 399; Nashville C. & St. L. Ry. Co. v. Crosby, 194 Ala. 338, 70 So. 7; Wade v.

Kay, 210 Ala. 122, 97 So. 129; Alabama City G. & A. Ry. Co. v. Bates, 155 Ala. 347, 46 So. 776, and McGowin v. McGowin, 232 Ala. 601, 169 So. 232. Such a reference to the antecedent decisions is necessary in determining the minor's right to solicitors' fees. First National Bank v. Watters, 220 Ala. 356, 125 So. 222, and Watters v. First National Bank, 233 Ala. 227, 171 So. 280.

The first decision (First National Bank v. Watters, 220 Ala. 356, 125 So. 222) recognized the power of a court of equity to award advancements to the beneficiary of a trust for infants and to other than infants who are beneficiaries, before the time fixed by the creator of the trust, in order to give effect to the ultimate intention of him who set up the trust, when it is shown that no contingency exists which would ultimately defeat the right of the beneficiary for whose benefit the fund is to be applied.

In the second appeal (Watters v. First National Bank, 233 Ala. 227, 171 So. 280) it was held that "under will providing that balance of income arising from testator's estate after certain monthly payments should, so long as testator's wife lived, be divided between wife and children, share and share alike, fixing age 35 as maximum period for final distribution as to sons, providing that, when oldest child reached age of 21 years, corpus of estate was to be equally divided, one share for each child and one share for wife, and bequeathing undistributed portion of estate to grandchildren, testator's only son did not have vested interest at time of his death when 27 years old, but grandson acquired vested interest in entire estate, as against son's widow, to whom he bequeathed his entire estate." Headnote 11.

"Where, under will, accumulated income was to be paid over on final distribution, party entitled to corpus held entitled to accumulated income." Headnote 12.

In accord with well-established rules of testamentary construction, this court declared on the last appeal, Watters v. First Nat. Bank of Mobile, 233 Ala. 227, at pages 237, 238, 171 So. 280, 290:

"Our conclusion is that this appellant, the grandson, has now a vested interest in the entire estate. The result of a descent of the estate to blood relation of the testator has been said to be a circumstance usually considered of some significance in the construction of wills. Bingham v. Sumner, 205 Ala. 266, 89 So. 479; 69 Corpus Juris 100.

"As to the ultimate disposition of the corpus, testator's desire was that his children receive it, provided they reached a given age. But he makes it clear that, if they do not live to obtain the corpus, the estate should go to their issue, if any—his grandchildren—using the unambiguous language, 'I give, devise and bequeath said undistributed portion of my estate to my said grand-children, share and share alike'—thus foreclosing any power of disposition of the corpus by any of his children prior to the time of a final distribution of his or her share.

"We are also persuaded the fund referred to as the 'accumulated income' follows the same course of the corpus, and as a part thereof likewise goes to appellant. This accumulated income was to be paid over upon final distribution, and it therefore becomes a part of that fund. Julian, Jr., did not live to acquire anything by a final distribution, and we conclude, as stated, that this fund follows the corpus of the estate. And the statute (section 6914, Code of 1923 [section 3410, Code of 1907]), is, in our opinion, without application to the situation here presented. Henderson v. Henderson, 210 Ala. 73, 97 So. 353."

It is thus indicated that the entire estate (composed of original corpus and accumulated income) was settled by decision on last appeal, and that the questions raised and decided were the result of a serious litigable controversy, and that decision necessary to a right conduct and distribution of the trust estate.

To an understanding of the facts under which the services by appellant and associates of counsel for appellant were rendered, it should be said that Julian A. Watters died in 1913, leaving a large estate, and his survivors, his wife (Mrs. Edgar A. Du Mont) and one child (Julian, Jr.). When Julian, Jr., became 21 years of age, it became necessary to determine whether there was a contingency which would ultimately defeat the right of the beneficiary, and to whom the fund should be applied. This court so declared in Watters v. First National Bank of Mobile, 233 Ala. 227, 171 So. 280.

This will was dated April 29, 1913. In June, 1935, the child, Mr. Julian A. Watters, Jr., died, leaving his widow, Mrs. Madelyn Watters, and one child, Julian A. Watters, III, the grandchild of testator. He left a

will devising and bequeathing his estate to his widow. The trustee named by will of Mr. Watters, Sr., employed distinguished counsel as its representative and to advise as to the effect of the death of testator's son Julian A. Watters, Jr., upon the trust, and to disposition of the estate composed of corpus and accumulation; that is to say, whether Julian A. Watters did or did not have a vested estate that passed to his wife under Julian, Jr.'s will. The opinion rendered tó the trustee by its counsel was to the effect that the estate was vested in Julian, Jr., and passed by his will, but conceded that with plausibility it could be insisted that such ultimate estate was not in Julian, Jr., but vested in testator's grandchild.

The opinion rendered to the trustee, which is Exhibit I, among other things said:

"Viewing the will, however, as a whole and considering the fact that testator's children were the primary objects of his bounty, it is our opinion that under the provisions of the will, to the effect that when the oldest child reaches twenty-one 'the corpus of my estate shall be equally divided, one share being set apart for the benefit of each of my children, and another share set apart for the benefit of my wife', and in view of other provisions in the will treating the share so set apart as if it were the equitable property of the child to whom set apart, these shares were distributed within the meaning of the will and each child took a vested interest therein which would pass by will or by inheritance.

"This construction is tacitly put on this will in First National Bank v. Watters, [220 Ala. 356] 125 So. 222, though the specific question was not there raised. However, that case does treat the interest of Julian A. Watters, Jr., as a vested interest, enjoyment of which was merely postponed. The Court, so treating this interest, applied the doctrine that a court of equity has power to hasten the enjoyment of a trust fund, provided 'no contingency appears which would ultimately defeat the right of the beneficiary for whose benefit the fund is to be applied.' The opinion accordingly carries the implication that there was no contingency which could 'ultimately defeat' the right of Julian A. Watters, Jr., to the share of the estate set apart to him.

"While we believe that this is the correct construction of the will, we must concede that the question is debatable, and such being the case, it is our opinion that the only safe course for you, as trustee, to pursue, is to have the will specifically construed in this respect before taking any steps that may subject you to liability in the event the construction we place on the will proves erroneous.

"As to whether the death of Julian A. Watters, Jr., terminates the trust as regards his share, it is our opinion that it does not. He did not have the right before he reached the age of thirty, to the corpus of his share, but had only the right to the income therefrom, and he could transmit no greater right to his heirs or devisees."

Thus was the trustee warned by its counsel of the serious doubt on the questions of "vested" or "contingent" estate that existed as to Julian, Jr., and as to Julian, III. This was necessary to be settled before the trustee could safely discharge its duty in the premises. This necessity of construction was enforced by the fact, as we have stated, that Julian, Jr., left a will, which was duly probated in another county. Counsel for the trustees proceeded according to instructions to present its proper pleading to the circuit court in equity, to determine the facts necessary to a construction of Mr. Watters' (senior) will, and to the establishment of whether that will gave Julian, Jr., a vested estate, which under the latter's will went to his widow, Mrs. Madelyn Watters.

When the will of Mr. Julian A. Watters and the opinion rendered on last appeal by this court are considered, it is apparent that there was a necessity for construction to an ascertainment of where the estate was vested. First National Bank of Mobile v. Hartwell, 232 Ala. 413, 168 So. 446. The difficulty is further illustrated by our recent decisions in Bingham v. Sumner, 206 Ala. 266, 89 So. 479; Steele v. Crute et al., 208 Ala. 2, 93 So. 694; Miller v. Wall, 216 Ala. 448, 113 So. 501. See, also, the cases of Crawford et al. v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, 210 Ala. 73, 97 So. 353, and Powell et al. v. Pearson, 220 Ala. 247, 125 So. 39.

In Pearce v. Pearce et al., 199 Ala. 491, 74 So. 952, 954, it is observed:

"No question can arise in the course of legal inquiry, perhaps, that is more doubtful in its nature, or less referable to fixed rules, than whether the words of a devise or bequest constitute a vested or a contingent estate. Code 1907, §§ 3398–3401. 'Estate' is a word capable of the greatest extension, and comprehends every

species of property, real and personal. It describes both the corpus and the extent of the interest. Deering v. Tucker, 55 Me. 284; Hunter v. Husted, [45 N.C. 141], Busb.Eq. 141; Godfrey v. Humphrey, 18 Pick.(Mass.) [537] 539, 29 Am.Dec. 621. A testator has the right to dispose of his entire estate with such restrictions and limitations, not repugnant to established law, as he sees fit. Code 1907, §§ 3416, 3417; Broadway Nat. Bank v. Adams, 133 Mass. 170, 43 Am.Rep. 504. * * *

"In Phinizy v. Foster, 90 Ala. 262, 7 So. 836, the pivotal question was whether the estate in remainder created by the will vested at the death of the testator or was contingent. The distinguishing characteristics of the two estates were thus defined: 'A remainder is said to be vested, when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines —when a present interest passes to a certain and definite person, to be enjoyed in futuro; and it is said to be contingent, when the estate is limited, either to a dubious and uncertain person, or upon the happening of a dubious ·or uncertain event— uncertainty of the right of enjoyment, as distinguished from the uncertainty of possession.' "

■ It was likewise a pertinent inquiry on construction of Mr. Watters' will whether the corpus of the trust was such that it accumulated under the facts, or whether it was a trust required by the instrument creating the trust to accumulate. It was important to the trustees and to the beneficiary. Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. It is evident that due procedure in the presentation of this case to this court required that the respective insistences for and against the right of the grandchild, Julian A. Watters, III, be made. This was done in good faith and with marked ability by the several solicitors of record, evidenced by the several proceedings to which we have adverted. And the report of the register allowing the sum of $1,500 for trustees' solicitors of record as a reasonable fee for their services in the circuit court and in this court, and confirmed by the final decree, was without error. The exceptions to this item of the register's report were properly overruled. Of this item the register reported: "This fee has been paid to them by the trustee out of the estate of Julian A. Wat-

ters, Sr., and the Trustee is seeking credit or approval of this payment. As to whether this is a proper charge in whole or in part against the estate of Julian A. Watters, Sr., Julian A. Watters, Jr., or Julian A. Watters, III, or against Madelyn Watters is not within the province of the Register to say."

It is then necessary for this court to indicate how this item of expense of $1,500 is to be charged. It was properly paid and charged by the trustees to the estate of Mr. Julian A. Watters, Sr.

The answer to the other inquiry of the reasonable attorneys' fees to be paid depends upon whether Julian A. Watters, Jr., or Julian A. Watters, III, had the vested interest in the estate of testator, Julian A. Watters, Sr., and other considerations to which we will advert. It should be said here that the judgment of this court that the attorneys' fees allowed to appellants are to be charged or taxed, not against the estate of Mr. Watters, Sr., but against that of Julian Watters, III. Watters v. First National Bank of Mobile, supra; Steele et al. v. First Nat. Bank et al., 233 Ala. 246, 171 So. 353, 356; Mosely & Ely v. Norman, 74 Ala. 422; Bidwell v. Johnson et al., 191 Ala. 195, 67 So. 985, and Code of 1923, § 6262. That is to say, such is the due taxation or charge of attorneys' fees of the minor under the former decisions, and which is the correct application of our decisions, holding that Julian A. Watters, III, was the owner of the estate after death of his father before reaching the age of 35 years.

We are thus brought to a consideration of the evidence on which the register's report was based and that before the circuit court on report of the register.

■ The testimony in support of the claims of the in facto attorneys for a reasonable compensation, out of the infant's interest in the estate, and that in opposition thereto, was given by experts, and of a matter that was subject to the exercise of common observation. This court can therefore fix that compensation in such sum as is deemed just and right under the uncontroverted facts as to services rendered. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Atlantic Coast Line R. Co. v. Jackson, 225 Ala. 652, 144 So. 813, and Metropolitan Life Insurance Co. v. Halsey, 230 Ala. 193, 160 So. 248.

The textbook on the subject of "Fee Contracts of Lawyers," by Earl W. Wood,

in chapter VI, "Reasonable Value of Legal Services," collects the authorities on the many elements entering therein. As to solicitor's fees, Mr. Justice Clifford said in Stanton v. Embrey, 93 U.S. 548, 557, 23 L.Ed. 983, 985: "Attorneys and solicitors are entitled to have allowed to them, for their professional services, what they reasonably deserve to have for the same, having due reference to the nature of the service and their own standing in the profession for learning, skill, and proficiency; and, for the purpose of aiding the jury in determining that matter, it is proper to receive evidence as to the price usually charged and received for similar services by other persons of the same profession practicing in the same court. Vilas v. Downer, 21 Vt. 419."

Wood thus states the "Standard of reasonable value":

"It is the reasonable worth of the services, not solely according to what they produced for the client, but also according to what such services, in themselves, were reasonably worth, considering the labor, time, talent, and skill expended in the bestowal of them. Recovery can be had on an implied fee contract for legal services, even if the lawsuit is lost and the desired result never accomplished.

"The reasonable value of legal services is to be determined from a consideration of (a) the fee commonly paid members of the legal profession for the services, and (b) the circumstances under which the services were rendered. The Supreme Court of Illinois, however, announced the rule in that state to be that 'where the professional services is of such a character, that it has become usual and customary to make a certain charge for its performance, evidence should be given of such usual and customary charge.' * * * In so holding, the Illinois court said: 'As to much of the legal work which is done for their clients by attorneys-at-law, there is no customary or established charge, especially where, as in this state, legal fees, except in amicable partition suits, are not the subject of statutory taxation.' Louisville, N. A. & C. Ry. Co. v. Wallace, (1891) 136 Ill. 87, 26 N.E. 493, 11 L.R.A. 787:

"In referring to the reasonable value of comprehensive legal services, the Supreme Court of Michigan said: 'No one can state as a fact the value of extensive legal services. He can only give his opinion. The value is based upon a number of considera-

tions. * * * It is not like wages, goods, and even some minor professional services, with a market value which may be stated as a fact or, by reason of local custom, have a definite price.' Baxter v. Szucs, (1929) 248 Mich. 672, 227 N.W. 666." Dent v. Foy, 214 Ala. 243, 107 So. 210, 211.

The many authorities collected on the subject are to the effect that the reasonable value of legal services is to be determined by time, labor, skill, experience, professional reputation, weight of responsibility, nature and value of services involved as to the subject matter, and the results accomplished by the rendition of the service. Wood's "Fee Contracts of Lawyers," p. 74; Faulk & Co. et al. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450.

Adverting to the decision of this court in Dent v. Foy, supra, it is therein declared that in fixing attorney's fees, wherein evidence consists of opinions of competent witnesses expressive of their judgment as to value of services, the reviewing tribunal may call to their aid their own judgment of value of such services, and fix fee accordingly; that is, the "register's finding as to reasonable attorneys' fee is not to be accorded that conclusive character which obtains when finding is on disputed facts depending on veracity of witnesses rather than a matter of judgment arrived at from opinion evidence aided by his own." Faulk & Co. et al. v. Hobbie Grocery Co., supra.

This court will therefore look to the whole record, or records (as in the instant case), including the finding of the register, and the finding of the trial judge, and apply to the whole our own judgment to determine "as best we can what is just between the parties." Dent v. Foy, supra.

In Willett & Willett et al. v. First National Bank of Anniston, as Executor, etc., et al., 234 Ala. 577, 176 So. 344, 347, this court said: "While the presumption on this appeal is that the register was right, yet it is competent for this court, in cases like the present, where the value of services rendered is the question for determination, to exercise its own independent judgment and determine the same upon a consideration of the whole case as developed on the record, without being bound to accept the opinion of the witnesses. Citizens' Light, Heat & Power Co. v. Central Trust Co. of Illinois et al., 200 Ala. 18, 75 So. 330; Andrews v. Frierson, 144 Ala. 470, 39 So. 512; Robinson v. Crotwell, 175 Ala. 194,

57 So. 23; Dent v. Foy, 210 Ala. 160, 97 So. 627."

It is further declared by this court that in estimating the reasonable value of legal services of an attorney many elements may be recognized, and among those to be considered and entering into the allowance of such reasonable compensation are the measure of responsibility imposed and the success obtained. Faulk & Co. et al. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450, and Dent v. Foy, supra.

It is well insisted by appellant that there were several measures of success at issue in the case, some of which were: (1) the gain or loss of the entire corpus; (2) the loss or gain of half of the corpus presently and the possibility of other litigation on the death of Mrs. DuMont; (3) the gain of the entire corpus, or a part thereof, and the loss or gain of the accumulated income; or (4) the contingency of a holding that the final vesting of the estate was not to be determined "until the death of testator's widow, Mrs. DuMont."

Distinguished opposing counsel argued that the death of Mrs. DuMont was the condition precedent to Julian, III, being entitled to the large estate. The contingency of success or measure of success has been given application in regulation of solicitors' fees under legislative enactment. Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, 568, and Code of 1923, §§ 7213, 7542.

In the recent decision of Willett & Willett et al., v. First Nat. Bank of Anniston, as Executor, etc., et al., supra, Mr. Justice Knight observed: "We have carefully considered the entire record as it touches the issue here involved, and are reasonably satisfied that the appellants, by their efforts and skillful services, extending over a period of two or three years, were the efficient cause of bringing into the common trust fund not less than $50,000 in cash or its equivalent. The work involved required the utmost skill and labor, and the appellants have earned a fee (section 6261), and in fixing the amount of the same consideration should be given to the results obtained, and the work and labor required."

After a careful examination of the antecedent cases of First National Bank v. Watters, 220 Ala. 356, 125 So. 222, and Watters v. First National Bank, 233 Ala. 227, 171 So. 280, and of all the evidence, giving due consideration and weight thereto, we have reached the conclusion that the trial court improperly fixed appellants' reasonable compensation as attorneys for the minor, to be taxed against the estate of Julian, III. We are of the opinion that the attorneys are entitled to $35,000 for their services, as a reasonable compensation. That amount is so fixed. In this respect the decree of the circuit court is corrected and affirmed.

On the death of Julian A. Watters, Jr., on June 10, 1935, the trustee had from income undisbursed due to him $2,867.32. By apportionment the register reported that the estate of Julian A. Watters, Jr., was entitled to said sum of $2,867.32. This conclusion was reached by the register under the assumption that rents and income accrued under the will "day by day" up to the date of Julian, Jr.'s death. Exceptions were duly reserved to this part of the register's report in behalf of Julian Watters, III. This sum of $2,867.32 the decree of the circuit court ordered to be paid to Mrs. Madelyn Watters, as executrix of the will of Julian A. Watters, Jr.

What then is the law in this jurisdiction under the will of Julian A. Watters, Sr., in connection with the apportionment of rents or income? It is the rule of the common law that sums of money, payable periodically and at a fixed time, are not apportioned during the period that intervenes. 3 Corpus Juris Secundum, Annuities, p. 1383; 3 Corpus Juris, pp. 217 and 218; Perry on Trusts and Trustees, 7th Ed., vol. 2, §§ 556 and 556a, p. 953.

Mr. Justice Gray said in Dexter v. Phillips, 121 Mass. 178, 23 Am.Rep. 261,

"It is the general rule of the common law, followed in chancery, that sums of money, payable periodically at fixed times, are not apportionable during the intervening periods.

"It is accordingly well settled, both at law and in equity, except when otherwise provided by statute, that a contract for the payment of rent at the end of each quarter or month is not apportionable in respect of time. Sohier v. Eldredge, 103 Mass. 345. Clun's case, 10 Rep. 127a, 128a. Jenner v. Morgan, 1 P.Wms. 392. In re Markby, 4 Myl. & C. 484. Browne v. Amyot, 3 Hare 173. Beer v. Beer, 12 C.B. 60. In re Clulow, 3 Kay & J. 689. The opposing decision on this point in [Re] Foote, appellant, 22 Pick. 299, appears to have been made without much consideration or reference to authorities, and is in

·effect overruled by Sohier v. Eldredge, ubi supra."

The rule is stated by Mr. Perry in "Trusts and Trustees," as follows:

"§ 556. `At common law rent could not be apportioned; and if a tenant for life died near the end of a quarter, his representatives could receive no part of the rent for the term. Statutes have now changed that·rule in England: * * *

"§ 556 a. An annuity to a tenant for life is not apportionable; and if the tenant dies within three days of the day of payment, his representatives are not entitled to any proportion of the annuity. But where an annuity is given to a widow in lieu of dower, or for maintenance of an infant, or for the separate maintenance of a married woman, an apportionment is made on the ground that such annuity is necessary for support till the death of the annuitant." pp. 953, 954—"Perry on Trusts and Trustees."

To like effect is 3 Corpus Juris Secundum, Annuities, p. 1383, § 6, which reads as follows:

"The common-law rule against apportionment of annuities is subject to certain exceptions based upon the necessity of the annuitant's maintenance as long as he lives.

"The rule stated in § 6a(1) that at common law annuities are not apportionable in respect of time is subject to certain exceptions. Thus they will be apportioned where they are given for the maintenance of a wife living apart from her husband or for the support of minor children. So annuities given in lieu of dower, or arising from a fund the income of which accrues from day to day, have been apportioned under exceptions to the general rule. Apportionment in such cases ·has been said to be founded upon the necessity of maintenance so long as the party lives, and if no necessity is shown, there can be no apportionment."

In the case of New York Life Ins. Co. v. Finkelstein, Ind.Sup., 8 N.E.2d 598, the Chief Justice observed that at common law an annuity cannot be apportioned; that by the death of Samuel Heizer on a day prior to the day on which, if he had been living, his annuity would have been due and payable, his annuity for the year in which he died became and was wholly lost, so that the appellee as the administratrix of said decedent's estate was not entitled to a proportionable part of such annuity. See, also, Nading v. Elliott, Trustee, et al., 1894, 137

Ind. 261, 279, 36 N.E. 695, and Watson v. Penn, 108 Ind. 21, 8 N.E. 636, 58 Am.Rep. 26.

Alabama has no statute on the instant apportionment made by the register. To the common-law rule an exception has been made of rents as between a life tenant and remainderman by the Code of 1923, § 8831. Such was the result of the decision of this court in Graham et al. v. Graham et al., 205 Ala. 644, 649, 89 So. 25, 29 and 30.

It is insisted that the exception to the common-law rule of no apportionment did not apply to the relation between Julian, Jr., and Julian, III, under the will, since they were not in the generally understood sense of the term "life tenants and remaindermen." They were the beneficiaries of the trust with a contingent estate in Julian, Jr., to acquire the fee if he lived until he was 35 years of age; and Julian, III, was a contingent devisee in the event Julian, Jr., died before he reached that age (indicated in the will) without obtaining final distribution.

We have indicated that the former decision was that the estate of Julian, Jr., ·was contingent and never vested. The question recurs, when did the right of income cease to be contingent and become vested? The will of the testator is not contrary to law, but is the law of that instrument, controlling devises and bequests contained therein. No fair construction of ·the will, and intention of the testator manifested therein would exclude the son from income and rents to the date of his death in favor of the grandson before the date of the son's death.

We cannot agree with appellant's counsel that the will justifies their insistence by its direction that the trustee pay Julian, Jr., out of the "rents, incomes and profits" on a definite date fixed—"the first day of each month"—that Julian, Jr., had no right of appropriation of income by trustee except on one definite day of each month. It is true he could not have compelled a distribution on the date of his death, ·yet this is not saying that the testator intended such application of the common-law rule to the prejudice of the child he was making such a large bequest to, on condition of age.

We believe this case is distinguishable from Pierce et al. v. Fulmer, 165 Ala. 344, 51 So. 728, where the question was between life tenant and remainderman, and ˙from First National Bank of Stevenson v. Crawford et al., 25 Ala.App. 463, 149 So. 230,

261

where the question was one of severance of rents from the reversion.

No fiction of law would rise above the testator's intention that the son, to the day of his death, was the beneficiary of income, and only thereafter the grandchild. The register held for apportionment in favor of the son to the date of his death, and the trial court so decreed as to this item. In this holding there was no error. This is in accord with recognized authorities in this and other jurisdictions to the effect that a court of equity has the power, according to the necessities and justice of the case, to hasten enjoyment of the trust fund by decreeing advances to beneficiaries pursuant to the intent of the trust. Pearce v. Pearce, 199 Ala. 491, 74 So. 952; First National Bank v. Watters, 220 Ala. 356, 358, 125 So. 222; 39 A.L.R. 40; 26 R.C.L., Trust, § 242, p. 1380; and Stewart v. Hamilton, 151 Tenn. 396, 270 S.W. 79, 39 A.L.R. 37 and 39. And this is in accord with the manifest purpose of Mr. Watters' will, and the respective trusts set up for his son and grandson.

A decree accordingly will be here entered fixing and allowing the guardian ad litem, and his associates of counsel as compensation in said cause, the sum of $35,000, and to this extent the decree of the circuit court is here corrected, and as so corrected is affirmed. ANDERSON, C. J., and BROWN, J., dissent as to the amount of this allowance, and think the decree of the circuit court should be affirmed in toto.

Corrected and affirmed.

GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

ANDERSON, C. J., and BROWN, J., dissent as indicated.

ANDERSON, Chief Justice, and BROWN, Justice (dissenting in part).

We concur in the majority opinion in all respects except in so far as it increases the allowance to the guardian ad litem from eight to thirty-five thousand dollars, and as to this we respectfully dissent.

Section 8259 of the Code of 1923 governs the fixation of such fees and confers upon the court appointing the guardian ad litem the duty of ascertaining "a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the costs." The court, in pursuance of this power and in the exercise of a judicial discretion incident thereto, made what appears to us a very liberal allowance.

It appears without dispute that, when extra counsel were authorized and employed by the court, they agreed to be satisfied with a reasonable fee to be fixed as a guardian ad litem's fee, and, unless it can be said that the court grossly abused the discretion, to the detriment of the guardian ad litem, the decree in this respect should be affirmed. Butler et al. v. Fuller et al., 204 Ala. 272, 85 So. 539.

The question presented in the litigation was one of law arising from the interpretation of the will of Watters, Sr., not involving any dispute of fact. For the services performed by the complainant's solicitors, involving the same character and extent of services, they were allowed a fee of $1500, and accepted it without question, and the evidence is clear to the conclusion that, if the minor had been sui juris and able to contract, he could have secured the rendition of the services rendered by the guardian ad litem and his associates for from three to five thousand dollars; but, being an infant, he must depend upon the court and its appointees to protect his interest.

The estate consists of a trust fund of liquid assets and cash in the hands of the bank as trustee, accumulated by the grandfather of the infant and left for its protection by the grandfather's will. The services rendered did not add one cent to the fund, and the controversy was whether the estate should go to the mother of the infant or to the infant. The services consisted of arguing the case and the preparation of the brief on the hearing in the circuit court and in this court on appeal, and, as conceded in argument, did not consume more than five months time. The minor's interest is protected here by taxing against his estate, as costs, a fee of $35,000 to be taken from said trust fund, and to that extent reducing the inheritance. This, to our mind, is shocking to the judicial conscience. The trial judge should be commended for his judicial courage in fixing the fee of the guardian ad litem at $8,000, and that decree, in our judgment, should be affirmed.