The issues on appeal are whether the mortgages between the appellee (Poston) and the appellant (Army Aviation Center Federal Credit Union) were contracts susceptible to breach and whether the jury correctly concluded that the contracts were breached, and, next, whether the trial court erred in denying defendant's motion for a directed verdict as to the misrepresentation count of appellee's complaint. We agree with the trial court's determination that the mortgages were contracts which the jury could find were breached, but we find that the trial court erred in denying defendant's motion for a directed verdict as to the misrepresentation count of Poston's complaint. Even though we find that the jury could have found that the contracts were breached, we, nevertheless, reverse and remand, because the jury returned a general verdict and the Credit Union had specifically requested the trial court to direct a verdict in its favor on the misrepresentation count.
Poston, individually, and d/b/a Jim Poston Homebuilders, Inc., borrowed money from the Army Aviation Center Federal Credit Union for the purpose of constructing certain apartment units in the city of Enterprise. At the time Poston acquired the initial construction loans from the Credit Union, he anticipated acquiring permanent financing for the apartment units; however, after he acquired the construction loans, the interest rates charged on real estate transactions escalated and Poston was unable to obtain permanent financing.
In late 1979, or early 1980, the notes representing the construction financing became due. At that time Poston conferred with Tom Carter, the president of the Credit Union, regarding an extension of the due date of the notes. In April 1980, a formal extension agreement was entered into between Poston and the Credit Union.
After the expiration of the extension agreement, Poston contacted Carter, seeking the Credit Union's permission to have the apartment units converted into townhouses. Carter encouraged Poston to convert the apartments into townhouses at a cost of $2,500.00. At this time Poston and Carter discussed the fact that the market was unsettled with respect to interest rates, which meant fewer potential buyers. Poston was under the impression that an understanding and agreement had been reached between him and Carter that he would be given a reasonable period of time to dispose of the townhouse units after converting them.
In the fall of 1980 Carter first mentioned foreclosure to Poston. At that time Poston had a potential buyer for one unit, but Carter refused to allow the townhouses to be sold as individual units. In October or November of 1980, the Credit Union employed J.E. Sawyer, an attorney, to pursue the collection of the notes and to foreclose the mortgages, if necessary. At this time Poston had the townhouse units listed under a contract with Nelson Tucker at a price of $235,000. This price would have enabled Poston to pay the $198,000 indebtedness and to recover money he had invested in the project.
In December 1980, Poston went to see the Credit Union's attorney regarding expenses and the legal fees of foreclosure. The Credit Union's attorney quoted a fee of over $20,000. At that time, Poston expressed outrage over this quoted fee. He also made sure that the Credit Union was aware of the fact that had the substantial attorney's fee not been involved, Tucker was financially able, willing, and ready to acquire the property.
On December 20, 1980, the foreclosure of Poston's property was completed. James E. Poston and Jim Poston Homebuilders, Inc. then filed a complaint alleging misrepresentation and/or deceit, outrageous conduct, bad faith breach of contract, and breach of contract. Poston later amended his complaint by adding a fifth claim, alleging breach of an oral agreement and interference with a contractual relationship between James E. Poston, Jim Poston Homebuilders, Inc., and Nelson Tucker.
At trial the Credit Union moved the court to direct a verdict in its favor at the close *Page 141 
of Poston's case. This motion was granted by the trial court with regard to those counts of the complaint denoted as "second claim," "third claim," and "fifth claim," but denied as to the "fourth claim" and "first claim." The jury returned a verdict for Jim Poston Homebuilders, Inc. and James E. Poston for $65,000. The Credit Union then moved the court for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. This motion was denied by the trial court. The Credit Union then filed a notice of appeal.
The first issue raised by the Credit Union is whether the mortgages given by Poston to the Credit Union were contracts between the parties susceptible to breach. The Credit Union argues that the provision of the mortgages relating to attorney's fees in the event of a default is unilateral and is intended as a promise of indemnity from the mortgagor to the mortgagee, and is not a contract, and that in the absence of a contractual obligation there is no foundation for appellee's action for breach of contract. The appellant also contends that the attorney's fee charged in conjunction with the foreclosure of Poston's mortgages were reasonable and that there was no evidence from which the jury could have determined that a breach of the contracts occurred.
We hold that the provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach. This Court, in Taylor v. Jones, 290 Ala. 268, 276 So.2d 130 (1973),cert. denied, 414 U.S. 879, 94 S.Ct. 126, 38 L.Ed.2d 124
(1973), quoting from White v. Blair, 234 Ala. 119, 173 So. 493
(1937), held that the claim for an attorney's fee is as much a part of the contract as any other feature of it; therefore, the Credit Union's contention that the provision relating to attorney's fees is intended as a promise of indemnity and, therefore, was not a contract provision, is erroneous.
Because the case may be retried after our remand, we set forth some principles of law which govern whether an attorney's fee is reasonable. In King v. Keith, 257 Ala. 463, 60 So.2d 47
(1952), this Court set forth the standard to be used in determining whether an attorney's fee is reasonable:
 "[T]hough in reviewing the propriety of the fixation of such fees by the lower court, this court will be guided by its own judgment upon a consideration of the whole record, Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1; Dent v. Foy, supra [214 Ala. 243, 107 So. 210 (1925)], we make such review with a presumption in favor of the ruling of the court below and will not set aside its decree unless we are convinced that that court abused the discretion wisely vested in it."
257 Ala. at 470, 60 So.2d at 52.
The reasonableness of an attorney's fee was also addressed by this Court in Peebles v. Miley, 439 So.2d 137 (Ala. 1983). InPeebles the trial court awarded attorney's fees of $26,744 as a result of the attorney's collecting $197,367.88 on a promissory note executed by the defendant. The plaintiff's attorney indicated that he had spent from eight to ten hours in the handling of this litigation. His arrangement with his clients was that he would obtain his fee on a percentage basis from the defendants. This Court held that the $26,744 awarded was not a reasonable fee.
This Court stated in Peebles:
 "Over 71 years ago, Justice Somerville set forth yardsticks to be used by our courts in determining reasonable attorney's fees. He said:
 "The general principle is everywhere established that an attorney is in such a case entitled to reasonable compensation for his services, appropriate to his employment, rendered by him to his client. — Humes v. Decatur, Etc., Co., 98 Ala. 461, 470, 13 So. 368. In the estimation of their value many elements may be material for consideration, among which are the nature and value of the subject-matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional experience and reputation of the attorney; *Page 142 
the weight of his responsibility; and the measure of success achieved.
 Faulk Co. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450 (1912).
 "Forty years later, Justice Simpson added an additional criterion to the six criteria above mentioned. King v. Keith, 257 Ala. 463, 60 So.2d 47
(1952). The seventh criterion was that in determining a reasonable attorney's fee, the trial judge should take into consideration the reasonable expenses incurred by the attorney. Although Justice Somerville mentioned in the Faulk case that the customary charges of lawyers in a particular community should also be taken into consideration in determining a reasonable attorney's fee, and some cases have stated that the amount of an attorney's fee could turn on whether the fee was certain or contingent, nevertheless, the codification of the criteria, for the most part, has remained as set forth in the Faulk
case. Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441 (1938); Ingalls v. Hare, 266 Ala. 221, 96 So.2d 266 (1957)." (Footnote omitted.)
439 So.2d at 140.
This Court further stated in that same case:
 "Having briefly discussed the most current legal principles dealing with reasonable attorney's fees, we would like to add one caveat. We agree with the admonition of the American Bar Association to the effect that a `fee is clearly excessive when after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.' We are of the opinion that $26,744.00 is in excess of a reasonable fee. As the amount of the recovery increases, the attorney's fee should be prudently reduced. Otherwise, we would have the anomalous situation of a routine collection of a promissory note of $2,000,000.00 and an attorney's fee of $400,000.00. The determination of a reasonable attorney's fee should not be done in a wooden, inflexible manner, but should be done so that all factors will be given their proper interplay. Likewise, we are of the opinion that an amount from $2,000.00 to $7,500.00 is inadequate compensation. Somewhere between the $7,500.00 and $26,744.00 lies a reasonable fee in this case.
 "Because of the sensitive nature of the problem of attorney's fees, the litigants and the public would be better served if both attorneys in this case, and their clients, attempted to settle these differences without further resort to the courts."
439 So.2d at 143-44.
The Credit Union next contends that the trial court erred in denying its motion for a directed verdict as to the misrepresentation count of the complaint. This count of the complaint alleges that the representation made by the defendant, that in the event of a default the defendant would charge to the plaintiffs a reasonable attorney's fee, was false.
The representation made by the defendant/appellant was not a representation of material fact sufficient to support a cause of action for fraud under the laws of the State of Alabama. The cause of action for fraud and misrepresentation is granted by Code 1975, § 6-5-100, et seq. In construing the cause of action created by § 6-5-100, the courts have required the following as the critical elements of an action for fraud:
 "(a) [A] false representation [usually] concerning an existing material fact, . . .;
 "(b) representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge, Hockensmith v. Winton, 11 Ala. App. 670, 66 So. 954 (1914);
 "(c) reliance by the plaintiff on the representation and that he was deceived by it, Bynum v. Rucker, 235 Ala. 353, 179 So. 241 (1938); *Page 143 
 "(d) reliance which was justified under the circumstances, Fidelity Cas. Co. v. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669 (1943);
 "(e) damage to the plaintiff proximately resulting from his reliance. Smith v. Smith, 266 Ala. 118, 94 So.2d 863 (1957)."
First Virginia Bankshares v. Benson, 559 F.2d 1307, 1313 (5th Cir. 1977), rehearing denied, 564 F.2d 416 (5th Cir. 1977),cert. denied, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802
(1978).
That the attorney fee provision related to a future event cannot be questioned. The payment of attorney fees was contingent upon (1) the absence of proper payment by Poston (2) the declaration of a default by the Credit Union, and (3) the employment of an attorney by the Credit Union for foreclosure and collection of the indebtedness. Therefore, the representation, if there was one, was not with regard to an existing material fact at the time the mortgage was executed.
This Court in Clanton v. Bains Oil Co., 417 So.2d 149 (Ala. 1982), dealt with the situation in which the representation did not concern an existing material fact but instead involved a future act or event. An additional burden is added to the party alleging misrepresentation in cases which involve a future act or event.
 "In order for promises or opinions to constitute fraudulent misrepresentations, there must have been at the time the representations were made an intention not to do the act promised, and such promise or opinion must have been given with intent to deceive. Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314 (1953). A promise, to constitute fraud, must be made with the intent not to perform it. Schwab v. Carter, 226 Ala. 173, 145 So. 450 (1933).
 "While a plaintiff may meet, by circumstantial evidence, this burden of proving a present intent not to perform a future act as promised, the circumstances shown by the evidence of record must be such that the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact sought to be proved."
417 So.2d at 151. In this case, there is a total absence of any evidence of probative value tending to show the Credit Union's intent to deceive or its intent not to perform as promised; therefore, the trial court should have granted the Credit Union's motion for a directed verdict.
The case was submitted to the jury on the breach of contract count and on the misrepresentation count. The jury returned a general verdict. The law of Alabama applicable when a cause is submitted to the jury on more than one count and a general verdict is returned, is stated in Estes v. Nix, 401 So.2d 64
(Ala. 1981), as follows:
 "Under Alabama law, if a complaint contains a claim for relief that is supported by the evidence and one that is not, the defendant must challenge the claim not supported by the evidence by way of a motion for directed verdict, specific to the claim not supported by the evidence, and setting out the grounds for such motion with specificity. See, Chandler v. Hunter, 340 So.2d 818 (Ala.Civ.App. 1976); Nashville, C. St. L. Ry. v. Farell Braley, 14 Ala. App. 380, 70 So. 986
(1915). Otherwise, if both claims go to the jury, and if a general verdict is returned, the court will presume that the verdict was rendered on the valid claim. Thrasher v. Darnell, 275 Ala. 570, 156 So.2d 922 (1963); Holley v. Crow, 355 So.2d 1123
(Ala.Civ.App. 1978); Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App. 1976). Because defendant's motion for directed verdict was specific as to the misrepresentation claim, alleging that plaintiffs failed to produce even a scintilla of evidence of misrepresentation, the Court of Civil Appeals' reversal of the judgment, 401 So.2d 62, was proper, and there is no need for the writ of certiorari to issue."
401 So.2d at 65.
Because the Credit Union's motion for directed verdict was specific as to the misrepresentation count, we must reverse the *Page 144 
judgment in this cause. In reversing the judgment, we note that the trial judge expressed "serious reservations" about submitting the misrepresentation count to the jury, as is shown by the record:
 "THE COURT: All right. All I am going to do is call it like I see it. That's all you all expect me to do. I am going to grant the directed verdict on the second count, on the third count, and the fifth count. I am going to leave in breach of contract count. I am going to leave in the fraud, although I have some serious reservations about leaving in the fraud. I am not sure it's there.
"MR. PITTMAN: We'll take our chances, Your Honor.
 "THE COURT: I am going to leave it in, but I'm going to grant the directed verdict as to Count 5 — what's called the fifth claim in here, the third claim, and the second claim, leaving in the fourth claim, breach of contract, and the first claim which is misrepresentation and fraud and deceit. I am leaving them in there."
The judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.