JONES, Justice.
This is an appeal from a judgment based on a directed verdict for the defendant on the plaintiff’s claims of fraud and misrepresentation by the defendant as holder of a promissory note and mortgage executed by the plaintiff and her late husband. We reverse and remand.
On December 22,1959, the plaintiff, Mrs. Grace Owens, and her husband, Huey Jackson Owens, executed a promissory note for $2,270 “with interest” to the defendant, C.L. Dinsmore, who had constructed a home for Mr. and Mrs. Owens. The promissory note was secured by a mortgage on the house. On the face of the note, Dins-more wrote in 6V2 percent as the annual interest rate. The payments were fixed at $15 per month.
According to testimony, Mr. Owens would miss a payment occasionally, but Dinsmore would allow Mr. Owens to “catch up.” In 1966, Mr. and Mrs. Owens separated and Mrs. Owens moved to Decatur. On August 10,1982, Mr. and Mrs. Owens deeded the property to their children, who assumed the indebtedness. Mr. Owens, however, continued to make payments on the note until the last few months before his death on October 9, 1984. Dinsmore’s records indicated that Mr. Owens had last made a payment in August 1984, leaving a balance of $1,720.23.
The Owens children made no payments on the note and, according to the testimony of Mrs. Owens and her daughter, in March 1985 Dinsmore informed them that he needed $120 to “catch up” the payments. Mrs. Owens also testified that Dinsmore contacted her while she was hospitalized and told her that he would have to foreclose on the mortgaged property unless the $120 was paid. Dinsmore’s testimony established that he collected the $120 from Mrs. Owens and that, contrary to his promise, the $120 payment was not credited to the balance due on the note, but was treated as an “attorney's fee.” No further payments were made.
During the summer of 1985, Dinsmore contacted the Owens children, who told him they were trying to secure a loan to pay off the note. Dinsmore then rejected a proffered payment schedule, a few months after receiving the $120, preferring to foreclose. The Owens children’s loan application was denied because of an unexplained defect in the title to the property. Notices of foreclosure were published in late August 1985.
On September 13,1985, Mrs. Owens filed suit against Dinsmore 1) seeking to enjoin Dinsmore from foreclosing on the mortgage; and 2) claiming fraud in Dinsmore’s statement that if Mrs. Owens did not pay the $120 Dinsmore would foreclose on the mortgage, contending that, in effect, that statement amounted to a representation that if she did pay it, he would not foreclose. Mrs. Owens later amended the complaint to add a second fraud claim based on Dinsmore’s alleged false representation that the note was in default and that unless the sum of $1,727.55 was paid Dinsmore would foreclose on the mortgage.
The Owens children deeded the property back to Mrs. Owens, who borrowed the money to pay off the note. On September *649 18, 1985, two days before foreclosure was to occur, Mrs. Owens paid $2,422.24 to Dinsmore’s lawyer. This payment included the payoff of the note plus foreclosure expenses and an attorney fee, and mooted that portion of Mrs. Owens’s complaint seeking an injunction. It is indisputed that the total payoff included $150 (the $120 previously paid by Mrs. Owens plus an attorney fee of $30) in excess of the correct mortgage balance plus expenses and attorney fee, a fact unknown to Mrs. Owens but known to Dinsmore at the time of the payoff.[1]
At the close of the plaintiff’s case, the defendant moved for directed verdict, claiming that the plaintiff had failed to prove her case. After a hearing on the motion, the trial court ruled for the defendant; the court granted the directed verdict and then entered a judgment for Dinsmore. This appeal followed.
A cause of action for fraud and misrepresentation is authorized by § 6-5-101, Code 1975. That section sets out, and this Court has frequently reaffirmed, the essential elements for an actionable claim of misrepresentation: 1) there must have been a false representation of an existing material fact; 2) the defendant must have known the representation to be false when made, or must have made the representation recklessly without regard to the truth of the representation, or with the false assertion of a knowledge that the representation was true; 3) the plaintiff must have justifiably relied on the representation; 4) the plaintiff must have been deceived by the representation; and 5) the plaintiff must have been damaged as a proximate result of his reliance on the representation. See § 6-5-101; Army Aviation Center Federal Credit Union v. Poston, 460 So.2d 139 (Ala.1984); First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir.1977), cert. denied sub nom. Walter E. Heller & Co. v. First Virginia Bankshares, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978).
We do not agree with Mrs. Owens’s contention that the defendant’s demand for the $120 was an actionable misrepresentation. Indeed, it is not disputed by Mrs. Owens or any of her children that past-due payments amounted to at least $120; thus, it is not the defendant’s demand for and the plaintiff’s payment of the $120 that requires our reversal of the judgment. Any misrepresentation by Dinsmore with respect to his crediting of the $120 to the mortgage balance did not result in any damage to Mrs. Owens until the subsequent misrepresentation with respect to the amount required to pay the mortgage balance in full.
The trial court did err in granting the defendant’s directed verdict as to the plaintiff’s claim of misrepresentation of the amount required to pay the balance due on the promissory note and, thus, to avoid the ultimate consequence of an already pending foreclosure proceeding. The circumstances to be considered include 1) the defendant’s acceptance of the $120 as payment of the amount he represented to the plaintiff would preclude foreclosure; 2) the defendant’s paying of the $120 to his son/lawyer as an attorney fee, rather than applying the money to the plaintiff’s past-due note payments — the stated basis for demanding the money from the plaintiff and her children; 3) the defendant’s representation to Mrs. Owens that he did not know the amount required to pay off the note; 4) the defendant’s misrepresentation to his lawyer as to the balance due to pay off the note; 5) the defendant’s knowledge that the $120 payment had not been credited to the plaintiff's account when he sent the plaintiff to his lawyer to obtain a statement of the balance due on the note; and 6) the reliance by Mrs. Owens on the accuracy of the defendant’s lawyer’s statement of the balance due on the note so that, threat *650 ened with foreclosure, she borrowed money to pay off the note based on the misrepresentation of the balance due. It is from these facts that a jury would be authorized to conclude that the defendant made his representations knowingly and with intent to deceive and that the plaintiff justifiably relied on these representations to her detriment.
As we noted above, the payment of the $120 does not support an independent claim for fraud. This fact, however, may be considered with all of the surrounding circumstances as bearing on the element of the defendant's intent to deceive as it relates to Mrs. Owens’s final payment of the “balance due” to avoid foreclosure. And, as this Court has frequently held, “[t]he issue of a defendant’s intent to deceive ... is a matter ‘peculiarly within the province of the trier of facts.’ Walker v. Woodall, 288 Ala. 510, 513, 262 So.2d 756, 759 (1972).” Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 333 (Ala.1987).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.

. It should be noted that Dinsmore’s foreclosure lawyer, who furnished Mrs. Owens the payoff figures, is in no way implicated in knowingly falsifying the balance due on the mortgage. The record is clear that he relied upon his client for the accuracy of the mortgage balance and that he properly adjusted the figures upon learning that the $120 payment had not been credited as represented. He then promptly filed, on behalf of his client, an offer of judgment in the sum of $150, plus all accrued court costs.