118 So.2d 732

**J. A. HANSON et al.**

v.

**CITIZENS BANK OF ONEONTA.**

**8 Div. 863.**

Supreme Court of Alabama.

Jan. 21, 1960.

Rehearing Denied March 24, 1960.

Johnson & Randall, Oneonta, for appellants.

S. R. Starnes, Birmingham, and C. D. Scruggs, Guntersville, for appellee.

LAWSON, Justice.

This case was submitted on briefs without oral argument. At time of submission it was assigned to another Justice. It was assigned to the writer of this opinion on November 23, 1959.

The case is here for the second time. On first appeal we affirmed a decree overruling demurrer to a bill in equity. Hanson v. Citizens Bank of Oneonta, 259 Ala. 383, 66 So.2d 896. The appeal with which we are presently concerned is from a final decree.

The record is voluminous, but the questions presented by the argued assignments of error do not require a detailed statement of the pleadings or of the evidence.

For the purpose of this appeal, it can be said that the pleadings consist of (1) a bill filed by Citizens Bank of Oneonta against J. A. Hanson and wife, Reba Hanson; (2) an answer by J. A. Hanson, which he made a cross bill as to the Citizens Bank of Oneonta and its president, A. L. Hanson, a brother of J. A. Hanson; (3) an answer by Reba Hanson, which she made a cross bill as to Citizens Bank of Oneonta; and (4) answers to the cross bills.

In its bill Citizens Bank of Oneonta, hereinafter sometimes referred to as the Bank, averred that at the time the bill was filed the respondent J. A. Hanson owed the Bank the sum of $11,367.65 with interest thereon, which indebtedness is evidenced by notes and secured by mortgages executed by the said J. A. Hanson and his wife, Reba.

The bill prayed that the court ascertain the amount due on the notes and mortgages as to principal, interest and attorneys' fees; that J. A. Hanson be required to pay the amount found to be due; that in the event the amount found to be due was not paid that the mortgages be foreclosed for the purpose of paying the indebtedness to the Bank, interest, attorneys' fees and costs.

In his answer J. A. Hanson denied that he was indebted to the Bank in any amount at the time suit was filed. He admitted that he had been indebted to the Bank and had executed the notes and mortgages referred to by the Bank, but averred that the debts evidenced and secured by the notes and mortgages had been paid.

The averments of the cross bill of J. A. Hanson pertinent to the questions raised on this appeal are hereinafter summarized.

He began to do business with the Bank shortly after his brother, A. L. Hanson, became an officer of the Bank sometime in the latter part of 1945 or the early part of 1946.

J. A. Hanson lived at Arab, Alabama, in Marshall County, and his business with the Bank in Oneonta, Blount County, was carried on principally by mail.

J. A. Hanson had confidence in the honesty and integrity of his brother, A. L. Hanson, and he did not keep a complete set of books showing his transactions with the Bank. He did not keep an account of his deposits in or of his withdrawals from the Bank. He was given no receipts for deposits. He relied upon his brother, the president of the Bank, to keep his records straight.

He sent many deposits to the Bank by mail and by truck drivers for which he did not receive credit at the Bank.

From January 1, 1946, to the time the original bill in this case was filed on, to wit, October 14, 1952, he sent to the Bank as much as $80,000 for which he did not get credit.

The said $80,000 was fraudulently or wrongfully converted to the use of the Bank or to the use of A. L. Hanson.

J. A. Hanson did not learn that "many thousands of dollars of his funds had not been credited to his account in said bank until about the time of the filing of the suit in this case."

In February or March of 1946, J. A. Hanson forwarded to the Bank for deposit to his account a check for $10,692.67 drawn by Pepperell Manufacturing Company in his favor. J. A. Hanson never received any credit for the proceeds of this check. A. L. Hanson, acting for the Bank, used the proceeds of the check as part payment of the purchase price of 142 shares of the Bank's stock which A. L. Hanson had purchased from Joseph J. Bain. J. A. Hanson prayed that the court declare that he has a lien on the 142 shares of stock.

In the latter part of 1945 or early part of 1946 J. A. Hanson purchased from the Bank or from his brother, A. L. Hanson, thirty shares of the Bank's stock. He paid to the Bank or to A. L. Hanson the sum of $6,750 as the purchase price of the stock, but the stock was never delivered to him and is in the possession of A. L. Hanson.

In his cross bill J. A. Hanson prayed for an accounting and offered to set off against any amount he owed the Bank a part of the sum found to be due him by the Bank. He asked for a judgment for the excess. He prayed that the court declare that he has a lien on the thirty shares of stock.

Reba Hanson, in her answer, averred that the notes and mortgages relied upon by the Bank had been paid in full.

In her cross bill she averred that none of the notes and mortgages were executed to secure her individual indebtedness and that those which she signed were as surety for her husband, J. A. Hanson. She averred that she was the owner of certain lands described in the cross bill covered by one or more of the mortgages and prayed that a decree be entered declaring the mortgages void as to such described property.

For our present purposes the answer to the cross bills can be said to simply deny the material averments of the cross bills.

After a submission on testimony not taken before the court a decree was entered on October 25, 1955, to the following effect.

The cross complainants, J. A. Hanson and Reba Hanson, failed to prove the averments of their cross bills and the cross bills were dismissed.

J. A. Hanson was found to be indebted to the Bank and the matter was referred to the Register to ascertain and report back to the court the amount of principal and interest owed the Bank by J. A. Hanson and the Register was also ordered to ascertain the amount of a reasonable attorneys' fee to be paid complainant's attorneys, which fee was to be charged against J. A. Hanson as a part of the mortgage indebtedness.

The Register held the reference. He found and reported to the court that J. A. Hanson owed the bank as principal and interest the sum of $15,114.80. The Register

further reported that the sum of $6,500 was a reasonable attorneys' fee.

Thereafter, on November 21, 1955, the court entered a decree wherein it is recited that exceptions filed to the Register's report were overruled and the Register's report was in all things confirmed. But such recital is not borne out in all respects by the terms of the decree.

The trial court did decree in accordance with the findings of the Register that J. A. Hanson owed the Bank, principal and interest, the sum of $15,114.80. But the trial court fixed the amount of attorneys' fee for the Bank's attorneys at $6,000 rather than $6,500 as reported by the Register.

The trial court further decreed that if "Respondents" failed to pay the indebtedness ascertained to be due, together with court costs, within fifteen days from the entry and filing of the decree that "the property described in the original bill shall stand foreclosed; and the Honorable I. B. Hyde, Register, shall then proceed to sell said mortgaged lands, at public outcry for cash, on January 9, 1956, * * *."

From the decrees of October 25, 1955, and November 21, 1955, J. A. Hanson and Reba Hanson have each appealed to this court.

The appellant, J. A. Hanson, does not here complain of the finding of the trial court to the effect that he had not paid in full all of his indebtedness to the Bank. He does not complain of the court's finding as to the amount of principal due the Bank on the notes.

He does complain of the amount of interest declared to be due and of the amount of attorneys' fees awarded the Bank's attorneys. We will discuss those contentions later on in this opinion.

J. A. Hanson has assigned as error the action of the trial court in dismissing his cross bill. In his brief he says in effect that he proved that the Bank was indebted to him in an amount greatly in excess of the sum found to be due by him to the Bank.

This record contains more than one thousand pages. There are several hundred exhibits, most of which were introduced in connection with J. A. Hanson's cross bill and the answer thereto.

J. A. Hanson testified to the effect that the Bank had in numerous instances failed to give him credit for funds which came into the possession of the Bank's officers and which should have been deposited to his account in the Bank or credited on notes which he owed the Bank.

However, after testifying in the trial court to the effect that the Bank failed to properly account for his funds in scores of instances, he complains here of only a few of those instances.

In his brief J. A. Hanson says in effect that the trial court erred in failing to decree that he was entitled to credit for large sums of money which he said he delivered to A. L. Hanson, an officer of the Bank, for deposit in his account in the Bank in February, 1946, and in the months of September and October, 1947.

There is no reason to discuss the evidence as it relates to these items. We are satisfied from the record that the Bank regularly furnished to J. A. Hanson a statement of his account. He made no claim that he had not received credit for the monies which he says he left for deposit in the Bank in 1946 and 1947 until more than five years after the statements of his account covering those years were furnished him by the Bank. He is therefore barred from questioning the correctness of his account. Act No. 128, approved June 10, 1943,. General Acts of Alabama, 1943, p. 130 (1955 Cum. Pocket Part, Code 1940, Title 5, § 136 [1]), provides in pertinent part as follows:

"When a statement of account has been rendered by a bank or trust company to a depositor accompanied by cancelled checks or vouchers, if any, which are the basis for debit entries in such account, or the depositor's pass-

book has been written up by the bank or trust company showing the condition of the depositor's account and delivered to such depositor with like accompaniment of checks or vouchers, if any, such account shall, after the period of five years from the date of its rendition, in the event no objection thereto has been theretofore made by the depositor, be conclusively deemed to be finally adjusted and settled and its correctness conclusively presumed and such depositor shall thereafter be barred from questioning the correctness of such account for any cause."

In disposing of J. A. Hanson's contention in regard to the 1946 and 1947 transactions, we do not wish to be understood as indicating that we entertain the view that he sustained the burden which was upon him to show that he in fact made the deposits as claimed.

■ J. A. Hanson also argues that the trial court erred in not decreeing that he was entitled to a credit of $2,450 which he said he gave to A. L. Hanson, in cash, at Arab on March 3, 1952, to be credited against his indebtedness to the Bank.

A. L. Hanson denied that any such transaction took place.

On March 31, 1952, the Bank did receive the sum of $2,450 from the sale of certain lands by J. A. Hanson to Mrs. Velma K. Rhoads (Rhodes). A check for this amount, dated March 25, 1952, was sent to the Bank by an attorney. J. A. Hanson was notified of this fact by the attorney.

J. A. Hanson was indebted to the Bank and he received credit on two separate notes. $63.99 was applied on note No. 3576 and $2,386.01 was applied on note No. 3575.

There were entries to the effect that the credits were entered on March 3, 1952. The evidence shows these entries to be erroneous. They were made on March 31, 1952, not March 3.

We hold that J. A. Hanson failed to meet the burden upon him to show that he delivered the sum of $2,450, in cash, to A. L. Hanson on March 3, 1952.

■ The appellant, J. A. Hanson, asserts that under the evidence the trial court should have declared that he has a lien on thirty shares of Bank stock which is held by A. L. Hanson. This assertion is based on the claim that money which J. A. Hanson furnished A. L. Hanson with which to purchase the stock in the name of J. A. Hanson was used by A. L. Hanson to purchase the stock in his own name.

J. A. Hanson says that the thirty shares of stock were purchased by A. L. Hanson from Joe Bain for the sum of $6,500 or $6,600, which he gave A. L. Hanson in Guntersville on or about December 27, 1944. He says that on that occasion he delivered to A. L. Hanson a cashier's check from the First National Bank of Guntersville payable to A. L. Hanson, together with either $5,000 or $5,100 in cash.

We are convinced from a careful examination of the evidence that the transaction did not occur as J. A. Hanson claims. The evidence shows that A. L. Hanson did not begin the negotiations for the purchase of the stock from Joe Bain until the late summer or early fall of 1945.

The First National Bank of Guntersville did issue a cashier's check payable to A. L. Hanson on December 27, 1944. But we are convinced from the evidence that this check was used to pay a draft which J. A. Hanson had drawn on the Bank of Grove Hill, Alabama, on November 3, 1944. A. L. Hanson was cashier of the Bank of Grove Hill at that time and continued in that capacity until the end of December, 1945

J. A. Hanson did furnish some of the money with which A. L. Hanson purchased 112 shares of stock of the Citizens Bank of Oneonta, but we are convinced that such money did not consist of the cash and the $1,500 cashier's check which J. A. Hanson

claims he delivered to A. L. Hanson in Guntersville in December of 1944.

A careful reading of the record convinces us that the money of J. A. Hanson which was used to purchase the stock came out of proceeds of seven checks delivered to A. L. Hanson by J. A. Hanson in March, 1946.

These checks totaled $19,959.80. The thirty shares purchased for J. A. Hanson cost $6,690. The record indicates that the thirty shares were later purchased by A. L. Hanson from J. A. Hanson for $7,000. A. L. Hanson made payment for the thirty shares by satisfying obligations which J. A. Hanson owed the Citizens Bank of Oneonta.

As above shown, the checks delivered by J. A. Hanson to A. L. Hanson in March, 1946, totaled $19,959.80. Of this sum $6,690 was used to purchase the thirty shares of stock for J. A. Hanson. The remainder, $13,269.80, was ultimately deposited to the credit of J. A. Hanson by A. L. Hanson. At least one of the checks was originally deposited in the account of A. L. Hanson; that is, the check of $10,692.67, which is referred to in J. A. Hanson's brief. But the record shows that the amount of this check was included in the deposits later made by A. L. Hanson to the account of J. A. Hanson in the Citizens Bank of Oneonta.

We come now to the contention of J. A. Hanson that the trial court erred in confirming the Register's report in regard to the amount of interest due "on the notes and mortgages the foundation of this suit."

J. A. Hanson's contention in regard to interest is based on the premise that interest at 6% should have been computed on $7,000 from February 1, 1951, until November 4, 1955, and that interest at 8% should have been computed on $4,367.65 from April 1, 1951, until November 4, 1955.

That contention is not supported by the evidence.

Under the evidence J. A. Hanson was due to pay 8% interest on the sum of $7,753.66 from April 1, 1951, until November 4, 1955,

and 6% on the sum of $6,000 from December 1, 1951, until March 31, 1952, at which time the sum of $2,386.01 was paid on the $6,000 note, evidenced by note No. 3575. As to the balance due on that debt, interest was to be computed at 6% from March 31, 1952, until November 4, 1955, the date of the Register's report.

The total amount of interest as fixed by the Register is substantially correct. The slight difference in our calculations and the total amount of interest as determined by the Register is in appellants' favor.

■■ We have carefully considered the allowance of attorneys' fees by the trial court. The sum of $6,000 when viewed only in connection with the amount found due the Bank $15,104.80, may seem too large. But this voluminous record consisting of four volumes and more than one thousand pages reflects the fact that the attorneys for the Bank were called upon to explain hundreds of transactions which J. A. Hanson had with the Bank. This burden was placed upon the Bank and its attorneys by the numerous unproven charges made by J. A. Hanson to the effect that the officers of the Bank had on innumerable occasions failed to give him credit for monies which had come into their hands.

In order to properly present the Bank's case many records had to be examined and much testimony had to be taken. It is apparent from an examination of this record that the attorneys for the Bank were required to spend many days in the preparation of the defense of this case and many days in its trial.

The amount of the award is well supported by the testimony of competent members of the bar. There is no testimony to the contrary.

Such allowance rests in the sound judicial discretion of the trial court and we are not willing to say it has been abused in this case. Steiner v. Steiner, 254 Ala. 260, 48 So.2d 184; Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1; King v. Keith, 257 Ala. 463, 60

So.2d 47; Ingalls v. Hare, 266 Ala. 221, 96 So.2d 266.

The appellant Reba Hanson has made separate assignments of error and some slight reference to those assignments has been made in brief.

The only matter which is even remotely argued in brief filed on behalf of Reba Hanson is but repetitious of the questions raised in the brief of J. A. Hanson. The defense raised by Reba Hanson to the effect that her property was pledged to secure the debts of her husband, J. A. Hanson, is not adequately argued in brief.

This record has received our careful and studied consideration. We have concluded that reversible error has not been made to appear. Accordingly the decrees of the trial court are due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and COLEMAN, JJ., concur.