276 So.2d 130

**Voncile G. TAYLOR and Albert J. Taylor**

v.

**Claude M. JONES.**

**SC 91.**

Supreme Court of Alabama.

March 29, 1973.

Rehearing Denied April 26, 1973.

(5)

Fred Blanton, Birmingham, for appellants.

Adams, Gillmore & Adams, Grove Hill, for appellee.

MADDOX, Justice.

This is the third time this cause has been here on appeal. See Taylor v. Jones, 280 Ala. 329, 194 So.2d 80 (1967); Taylor v. Jones, 285 Ala. 353, 232 So.2d 601 (1970).

In each case, the appellee, Claude M. Jones, has been seeking to collect or enforce the payment of notes Walter and Rebecca Fox executed to the Jackson Bank and Trust Company in 1958, and purchased by Jones from the bank in 1960.

The facts are set out in the prior opinions on appeal but are briefly restated. Walter Fox owned approximately 56 acres of land in Clarke County. Walter Fox and his wife, Rebecca, on February 17, 1958, signed a promissory note for $629 to the Jackson Bank and Trust Company and executed a mortgage on the land to the bank to secure the payment of the note. Walter Fox, on October 13, 1958, executed a warranty deed to his wife, Rebecca, purporting to convey to her an undivided one-half interest in the 56-acre tract. No reference was made to the bank mortgage.

Walter Fox died testate on June 9, 1960. Under his will, duly probated, he devised to his wife, "a home on my estate until her decease." The rest, residue and remainder of his estate was devised to the Taylors, appellants here.

On October 28, 1960, Rebecca Fox conveyed her undivided one-half interest to Jones by warranty deed, in which no reference was made to the bank mortgage. Three days later, Jones paid the bank $529.50, the balance due on the note. The bank gave Jones the note and mortgage, but did not execute a written assignment to him at that time. On June 27, 1961, an attorney in fact for the bank cancelled the Fox mortgage on the mortgage records in the Probate Office of Clarke County. Efforts were made by Jones in 1961 to get the Taylors to contribute their portion of the indebtedness. They refused. Jones then obtained a written assignment of the note and mortgage from the bank. He executed an instrument purporting to release his undivided one-half interest from the lien of the mortgage. He then started foreclosure proceedings but learned of the bank's cancellation of the mortgage. On September 5, 1963, Jones began the first suit, a bill in equity to annul the cancellation of the mortgage on the record. He got relief and this Court affirmed. Taylor v. Jones, 280 Ala. 329, 194 So.2d 80 (1967).

The Taylors subsequently filed the second suit, a bill in equity for a declaration of their rights as cotenants with Jones regarding the extent of their obligation under the mortgage given by Walter and Rebecca Fox through whom they claimed their interest. Jones filed a cross-bill asking the court to determine the amount of the indebtedness. This Court affirmed the judgment of the trial court which determined that Jones could satisfy the entire indebtedness secured by the mortgage out of the Taylors' undivided one-half interest. Taylor v. Jones, 285 Ala. 353, 232 So.2d 601 (1970).

After affirmance, the Register of the Circuit Court of Clarke County set a date for conducting a hearing to determine the amount of the indebtedness. The hearing was held and the Register found that the sum of $888.68 was due as principal and interest on the note. He also found that the sum of $3,797.50 should be allowed the firm of Adams, Gillmore and Adams as a reasonable attorney's fee for the collection or enforcement of the note. The Taylors filed an exception to the report of the Register on the ground that attorney's fees allowed for professional services made for representing Jones in the two lawsuits above mentioned were not rendered "in connection with the foreclosure of the mortgage." The trial court, after hearing, accepted, approved and confirmed the report of the Register. From this order, the Taylors took this appeal.

The sole question presented is whether the attorney's fees rendered by the firm of Adams, Gillmore and Adams constituted a part of the indebtedness secured by the mortgage.

The promissory notes executed by Walter and Rebecca Fox contained provisions that they ". . . [E]ach severally agree to pay all costs of collecting or securing, or attempting to collect or secure this note, including a reasonable attorney's fee whether the same be collected or secured by suit or otherwise . . . ." The mortgage in question provides in part:

". . . That if said notes, or either or any of them, or any other debt or demand secured· by this mortgage, be not paid in full when due, said mortgagee, its successors and assigns, may take immediate possession of said property, or any part thereof, and with or without having same in its possession, sell and convey the same at public or private sale at its option, selling same as a whole, separately, or in lots, tracts or parcels, from time to time as it may see fit or deem best, and apply proceeds of sale first, to payment of costs and expenses incident thereto, including a reasonable attorney's fee, second to the payment of the *indebtedness secured hereby*, all of which shall thereupon become due and payable . . . ." [Emphasis supplied.]

Appellants argue that the attorney's fees awarded here were improper because (1) the obligation to pay an attorney's fee which was included in the note was a personal obligation of Walter and Rebecca Fox and not an obligation of the appellants; (2) Jones filed no claim against the estate of Walter Fox seeking a collection of his debt; (3) the stipulation in the mortgage for payment of a reasonable attorney's fee applied only to a foreclosure sale and did not include a foreclosure in equity.

In other words, appellants contend that Jones did not attempt to collect his debt against Walter Fox or his estate and the only attorney's fee to which he is entitled under the provisions of the mortgage are those attorney's fees incurred in foreclosing the mortgage under the power of sale contained therein. We disagree.

The evidence is uncontradicted that the note was in default and that Jones turned over the mortgage to his attorneys, who started foreclosure proceedings. After these proceedings were commenced, the inadvertent cancellation of the mortgage was discovered. The records of the litigation between these parties show that Jones attempted to get the Taylors to contribute their portion of the indebtedness. They refused. When Jones discovered that the mortgage had been cancelled on the record, he filed the first suit to have the cancellation annulled. The Taylors filed a cross-bill in that suit asking the court to find that there was no "indebtedness" and that Jones, the bank and the bank's attorney conspired to deprive the Taylors of their title to the subject property.

The second suit was filed by the Taylors. Jones filed a cross-bill asking that he be allowed to foreclose. He asked the court to determine the amount owed. He prevailed in the trial court and this Court affirmed.

After this Court affirmed, the cause was referred to the Register, as ordered by the Court initially in the judgment from which the appeal was taken. The Register held a hearing, made findings, which were accepted and approved by the trial court.

The notes in question contain provisions "to pay all costs of *collecting* or *securing,* or attempting to *collect* or *secure,* this note, including a reasonable attorney's fee, whether the same be *collected* or *secured* by suit or otherwise . . . ." [Emphasis supplied.] The claim for an attorney's fee is as much a part of the contract as any other feature of it. White v. Blair, 234 Ala. 119, 173 So. 493 (1937). Such fees, under the contract, become an effective part of the main debt.

It was stipulated that the note was in default, that the note and mortgage had been turned over to Jones' attorney and that foreclosure proceedings had been started in accordance with the terms of the mortgage. If the Taylors had paid the amount due under the note,[1] there would have been no attorney's fees, because the matter had not then been placed in the hands of an attorney for collection. The record now before us indicates that the first services performed by an attorney were on July 2, 1963. Jones had a right, under the provisions of the mortgage, to foreclose the mortgage and collect the debt. He had begun proceedings to foreclose, and now three proceedings later, he is still seeking to exercise his right to foreclose the mortgage and collect his "indebtedness," which, under the terms of the note, now includes attorney's fees in addition to the principal and interest. Cf. Carwile v. Crump, 165 Ala. 206, 51 So. 744 (1910), where the note and mortgage provided for reasonable attorney's fees in case the note was collected by an attorney and the note was placed in the hands of an attorney, and this Court held that any tender should have included not only principal and interest, but reasonable attorney's fees incurred between the time the matter was placed with an attorney and the time an agreement was reached relative to the amount due.

Appellants contend that the mortgage provided for an attorney's fee only in connection with a foreclosure sale and any fees incurred for bringing lawsuits or defending lawsuits are not included. This court has said that where the mortgage provisions for foreclosure under a power of sale provide for attorney's fees in connection with the foreclosure sale, an attorney's fee for foreclosure in equity is not recoverable. Hylton v. Cathey, 225 Ala. 605, 144 So. 579 (1932). But here Jones was not seeking foreclosure in equity. In his initial suit and in his cross-bill, in the second suit, he asked to be allowed to foreclose. Jones had turned over the matter to an attorney and foreclosure proceedings under the power in the mortgage were begun. The process was interrupted by the lawsuits, which we find Jones had a right to bring in the first instance and to defend against in the second instance. The evidence is clear that at the inception, when the matter was turned over to an attorney the indebtedness could have been liquidated by paying principal, interest and a nominal attorney's fee. The Taylors did not elect to allow collection at that time and consequently Jones was caused to incur substantial attorney's fees.

We agree with appellants that the attorney's fees for prosecuting the first suit and defending against the second cannot be recovered under the provisions of the mortgage which allows Jones to apply the proceeds of the sale to the payment of costs and expenses incident to the sale, including a reasonable attorney's fee. Hylton v. Cathey, supra.

As we read Hylton v. Cathey, supra, the cross-complainant there did not declare her right to the provisions of the note secured by the mortgage. This Court held:

"The complainant in the cross-bill did not declare her right to provisions now to be adverted to; the note secured thereby contained the following provision: ' * * * They each severally agree to pay all costs of collecting, or securing, or attempting to collect or secure this note, including a reasonable attorney's fee, not less than ten per cent, whether the same be collected or secured by suit or otherwise.' "

* * * * * *

"The allowance of attorney's fees as a part of the secured debt is 'dependent upon the agreement of the contracting parties, *within the terms of which the claim for fees must fall*,' is the observation in Eslava v. New York National

---

1. Apparently, in 1961 Jones offered to let the Taylors contribute *one-half* of the indebtedness, but they refused. Taylor v. Jones, 280 Ala. 329, 194 So.2d 80 (1967).

Building & Loan Ass'n, 121 Ala. 480, 484, 25 So. 1013, 1015 . . . ." 225 Ala. 606, 607, 144 So. 580, 581.

Inferentially, we think Hylton v. Cathey held that had the cross-complainant claimed her right to the provisions in the note that recovery of reasonable attorney's fees would have been permitted in that case.

We have examined the evidence submitted to prove the reasonableness of the fees and find that the trial court did not err in accepting and approving the report of the Register in this regard.

In accepting and approving the Register's report finding an attorney's fee of $3,797.50 was reasonable, the trial court had the right to call to its aid its own estimate of the value of the services, and this Court, in reviewing the amount fixed, will be guided by its own judgment upon a consideration of the entire record. Atkinson v. Kirby, 270 Ala. 178, 117 So.2d 392 (1960); Hampton v. Gulf Federal Savings & Loan Ass'n, 287 Ala. 172, 249 So.2d 829 (1971).

Even though the fee greatly exceeds the amount of principal and interest on the original obligations, the fee is not so excessive as to pronounce error in the allowance accepted by the trial court. There were two trials in the lower court. The attorneys successfully defended two prior appeals to this Court. The amount awarded was supported by testimony of a competent member of the bar of this state. We do not find it unreasonable. Hanson v. Citizens Bank of Oneonta, 270 Ala. 405, 118 So.2d 732 (1960).

The judgment is due to be affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.