902 So.2d 75 (2004)
Marie HUNT and Patrick W. Richardson
v.
NationsCREDIT FINANCIAL SERVICES CORPORATION.
2030147.
Court of Civil Appeals of Alabama.
December 3, 2004.
*78 Patrick W. Richardson of Bell Richardson, LLP, Huntsville, for appellants.
James C. Huckaby, Jr., John W. Scott, and Kimberly W. Geisler of Huckaby Scott & Dukes, PC, Birmingham, for appellee.
CRAWLEY, Judge.
On October 8, 2002, Marie Hunt sued NationsCredit Financial Services Corporation and Stanford Properties, LLC, seeking an accounting on a loan made to her by Robert C. Rice. Hunt alleged that in 1986 she had signed a promissory note with the face amount of $35,000, secured by a mortgage of residential real property, payable to Rice; that Rice had actually given her as consideration for the note and mortgage only $23,354.87, which, she claimed, she had repaid in full; that NationsCredit was the assignee of the note and mortgage; and that NationsCredit had wrongly declared her to be in default, had foreclosed on the mortgage, and had sold her property to Stanford Properties for $28,000 on October 3, 2002. Hunt sought a judgment declaring the foreclosure sale invalid. She also sought a temporary restraining order ("TRO") and a preliminary injunction to suspend the running of the time provided in § 6-5-251, Ala.Code 1975, for her to redeem the property and to prevent NationsCredit and Stanford Properties from making or recording any deed to the property pending a final judgment on the merits of her claims.
On October 8, 2002, the trial court granted Hunt's motion for a TRO, conditioned upon payment of a bond in the amount of $10,000 to cover the costs of NationsCredit and Stanford Properties, including reasonable attorneys fees, in the event the court later determined that they had been wrongfully enjoined. Patrick W. Richardson, Hunt's attorney, was the surety on her bond. Following a hearing on October 30, 2002, the trial court, on November 13, 2002, dissolved the TRO, denied Hunt's motion for a preliminary injunction and determined that NationsCredit and Stanford had been wrongfully enjoined. The trial court subsequently dismissed with prejudice Hunt's claims against Stanford Properties. NationsCredit answered Hunt's complaint, asserting various affirmative defenses.
On February 18, 2003, NationsCredit moved the court to award it costs and attorney fees, pursuant to Rule 65.1, Ala. R. Civ. P., and pursuant to the terms of the promissory note executed by Hunt, as a consequence of its having been wrongfully enjoined. Following a hearing, the trial court, on April 24, 2003, awarded NationsCredit attorney fees in the amount of $19,122.49.
On June 25, 2003, NationsCredit moved for a summary judgment on Hunt's underlying claims. On November 4, 2003, the trial court entered a summary judgment for NationsCredit on all pending claims and issues; that judgment included a provision directing payment of the attorney fees previously awarded to NationsCredit in the trial court's April 24 order. Hunt and Richardson appealed to the Alabama Supreme Court.[1] The supreme court *79 transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

I.
NationsCredit has filed a motion to dismiss as untimely that portion of Hunt and Richardson's appeal that deals with the award of attorney fees to NationsCredit after the dissolution of the TRO. This court deferred ruling on the motion until the case was submitted on the briefs of the parties. Now, having considered the merits of the motion to dismiss, we conclude that the motion is due to be denied because Hunt and Richardson's notice of appeal was timely filed.
On April 24, 2003, the trial court entered an order awarding NationsCredit attorney fees and costs as a consequence of its holding that NationsCredit had been wrongfully enjoined. On April 30, Hunt moved for an order, pursuant to Rule 54(b), Ala. R. Civ. P., making the court's attorney-fee award final. On May 5, the trial court entered an order, pursuant to Rule 54(b), certifying its April 24 order as final and staying the enforcement of the attorney-fee award pending appeal. On May 13, NationsCredit filed a motion in opposition to the Rule 54(b) certification, maintaining that an immediate appeal would be unnecessary and expensive and would create piecemeal appellate review. On May 16, the trial court granted NationsCredit's motion, set aside its May 5 Rule 54(b) certification, and set the finality issue for a June 5 hearing.
The record contains no ruling by the trial court on June 5 with respect to the finality issue. Instead, the record shows that on June 5 Hunt filed a petition for a writ of mandamus in the Court of Civil Appeals. This court denied the writ on August 26, 2003. On review by the Alabama Supreme Court, that court also declined, on October 10, 2003, to issue a writ of mandamus. On October 10, Hunt filed a renewed Rule 54(b) motion in the trial court. On November 4, the trial court entered a summary judgment in favor of NationsCredit on all pending claims and issues; that judgment included a provision directing payment of the attorney fees previously awarded to NationsCredit in the trial court's April 24 order. Hunt and Richardson filed a notice of appeal on November 5.
Citing Niezer v. SouthTrust Bank, 887 So.2d 919 (Ala.Civ.App.2004), NationsCredit moves this court to dismiss as untimely Hunt and Richardson's appeal of the November 4 order directing payment of the attorney fees awarded to NationsCredit in the April 24 order. We conclude that Niezer is inapplicable.
In Niezer, the administratrix of an estate sued SouthTrust Bank and Niezer, seeking a declaration of the rights and liabilities of the parties with respect to a certificate of deposit made payable to Niezer upon the death of the decedent. Niezer answered, counterclaimed, and cross-claimed, alleging claims of negligence and breach of fiduciary duty against the bank and claims of conversion against the administratrix, the estate, and the bank. The bank asserted a conditional counterclaim against the administratrix, maintaining that if it were found liable to Niezer, then it should be entitled to recover damages from the administratrix. The bank and Niezer each moved for, and the trial court entered on December 3, 2002, summary judgments on the claims asserted by the parties. Apparently, the bank's conditional counterclaim was the only claim not explicitly resolved by the entry of the summary judgments. However, because the trial court determined that the bank was not liable to Niezer on Niezer's claims of negligence, breach of fiduciary duty, and conversion, it is apparent that *80 the condition underlying the bank's conditional counterclaim never occurred and that the case was, therefore, completely resolved by the summary judgments entered on December 3, 2002.
Niezer subsequently requested an award of attorney fees from the bank. The trial court denied Niezer's attorney-fee request on March 14, 2003. On March 25, Niezer moved the trial court for permission to take an "interlocutory appeal." The trial court signed a "Certificate ... of Appealability," reciting the grounds stated in Rule 5(a), Ala. R.App. P. Niezer then petitioned the Alabama Supreme Court for permission to appeal from the denial of his request for an award of attorney fees. On May 22, the supreme court denied Niezer's petition on the following grounds:
"First, the Supreme Court concluded that Rule 5(a), Ala. R.App. P., had not been complied with. However, the Supreme Court also concluded that ... Niezer's petition was due to be denied `on the grounds that an interlocutory appeal will not lie where the right to appeal a final judgment exists.'"
Niezer v. SouthTrust Bank, 887 So.2d at 922 (quoting Ex parte Niezer (No. 1021148) (unpublished order)) (footnote omitted).
On June 24, 2003 Niezer moved the trial court to "finalize" its judgment, asserting that the supreme court had refused to hear his appeal because, he claimed, "`the judgment was not final.'" Niezer v. SouthTrust Bank, 887 So.2d at 922. The trial court granted that motion the following day. On July 23, Niezer filed a notice of appeal to the Court of Civil Appeals. SouthTrust moved to dismiss the appeal as untimely, arguing that the trial court's March 14, 2003, order denying an award of attorney fees was a final judgment from which Niezer had not filed a notice of appeal within 42 days. See Rule 4(a)(1), Ala. R.App. P. This court agreed with SouthTrust's argument and dismissed the appeal as untimely. We held:
"We can interpret the Supreme Court's ruling [denying Niezer's request to appeal an interlocutory order pursuant to Rule 5(a), Ala. R.App. P.,] only as a conclusion that the trial court's March 14, 2003, order was a `final judgment'; under Ala.Code 1975, 12-22-2, such that interlocutory review of that order was neither necessary nor appropriate."
Niezer v. SouthTrust Bank, 887 So.2d at 922. This court noted that the denial of Niezer's request for a Rule 5(a), Ala. R.App. P., appeal was consistent with prior caselaw from our supreme court, see Kelley v. Kelley, 271 Ala. 683, 127 So.2d 616 (1961); Kimbrough v. Dickinson, 251 Ala. 677, 39 So.2d 241 (1949), and from the United States Supreme Court, see Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), "to the effect that attorney-fee matters are separate and distinct from matters going to the merits of a dispute and that an appeal may be taken from a final judgment as to either aspect of a case." Niezer v. SouthTrust Bank, 887 So.2d at 923. This court also recognized
"that there is federal authority for the position that an order denying a party's request for an award of attorney fees is not appealable if a final judgment has not previously been entered on the merits of the case. See Sandwiches, Inc. v. Wendy's Int'l, Inc., 822 F.2d 707 (7th Cir.1987)."
Niezer v. SouthTrust Bank, 887 So.2d at 923 (emphasis added). "A `final judgment is a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants."'" Wilhoite v. Wilhoite, 897 So.2d 303, 312 (Ala.Civ.App.2004) (opinion on return to remand) (quoting Dees v. State, 563 *81 So.2d 1059, 1061 (Ala.Civ.App.1990) (quoting, in turn, Tidwell v. Tidwell, 496 So.2d 91, 92 (Ala.Civ.App.1986))).
We conclude that Niezer stands for the proposition that an order denying an award of attorney fees that is ancillary to an earlier decision that has completely adjudicated all matters in controversy between the parties is immediately appealable. Niezer is thus consistent with federal precedent, such as Budinich v. Becton Dickinson & Co., supra, and Sandwiches, Inc. v. Wendy's International, Inc., 822 F.2d 707 (7th Cir.1987), holding that a decision awarding or denying attorney fees is a final judgment and is, therefore, immediately appealable if it has been made in connection with a judgment on the merits that would, itself, be a final judgment but for the matter of attorney fees yet to be determined.
Accordingly, Niezer is inapplicable to this case because, although the trial court's April 24, 2003, attorney-fee award was made in connection with an order dissolving a TRO (and that order was, itself, appealable, see Rule 4(a)(1)(A), Ala. R.App. P.; Davis v. Hester, 582 So.2d 538, 540 (Ala.1991)), the order dissolving the TRO was not a "final judgment" because it did not completely adjudicate all matters in controversy between the parties.
The motion by NationsCredit to dismiss as untimely that portion of Hunt and Richardson's appeal that relates to the attorney-fee award is denied. As NationsCredit itself argued to the trial court, "[j]udicial economy and the best interests of the parties [would] be best served by a single appeal at the conclusion of this case." We now proceed to address the merits of the attorney-fee award.

II.
Rule 65(c), Ala. R. Civ. P., states, in pertinent part:
"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."
In Ex parte Waterjet Systems, Inc., 758 So.2d 505 (Ala.1999), the Alabama Supreme Court held that the phrase "wrongfully enjoined or restrained" in Rule 65(c) means that "`the party enjoined had the right all along to do what it was enjoined from doing.'" 758 So.2d at 512 (quoting Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir.1994)). The court explained that a party does not have to prove the opponent's bad faith in order to recover damages on an injunction bond and that the opponent may not defend against an award of damages by proving its good faith. The court held that a party's good faith or bad faith in seeking an injunction is relevant only to the amount of damages recoverable. The court stated that "the recovery on an injunction bond is limited to the amount of the bond," 758 So.2d at 513, unless the party seeking the injunction acted in bad faith, in which case "the defendant can recover damages from the plaintiff in excess of the amount of the bond," id.
Hunt and Richardson argue that the trial court erred in awarding costs and attorney fees pursuant to both the injunction bond and the terms of the promissory note Hunt signed. First, Hunt and Richardson maintain that NationsCredit was not enjoined or restrained by the issuance of the TRO, and, therefore, they say, it could not have been "wrongfully enjoined or restrained." According to Hunt and Richardson, only Stanford Properties, *82 LLC, the buyer at the foreclosure sale, was enjoined or restrained by the TRO. Hunt also insists that no attorney fees were due under the terms of her promissory note because her note was paid in full from the proceeds of the foreclosure sale.
Hunt's complaint specifically requested the trial court to issue a TRO to accomplish the following purposes:
"[T]o stay the running of the time provided by Code § 6-5-251 for plaintiff to redeem her property from the ... foreclosure sale, in the event the sale is found to be valid, pending the final judgment of the Court herein and restraining the defendants from making or recording any deed of plaintiff's property pending such judgment."
The TRO granted Hunt the "relief prayed [for]" and required a bond "conditioned to pay to the defendants such damages as they may sustain, including reasonable attorneys fees, by the wrongful suing out of [the TRO]." The TRO ordered
"that the application of Code § 6-5-251 is hereby stayed and the plaintiff will not be required to surrender possession of her property to the foreclosure sale purchaser, Stanford Properties, LLC, or its successors or assigns, in order to preserve her right to redeem same under Code § 6-5-248, pending a hearing hereon."
We are inclined to agree with Hunt and Richardson that, as a practical matter, NationsCredit was not enjoined or restrained in any way by the issuance of the TRO. Specifically, the TRO restrained Stanford Properties, the buyer at the foreclosure sale, from demanding that Hunt surrender possession of the property within the 10-day period provided in § 6-5-251 or lose her statutory right of redemption. The TRO purported to restrain NationsCredit only from "making any [foreclosure] deed" to the property. The record demonstrates, however, that before Hunt sought injunctive relief on October 8, 2002, NationsCredit had, on October 3, 2002, already "made" a foreclosure deed to Stanford Properties. The TRO did not enjoin or restrain NationsCredit from delivering the deed.
"`If injunctive relief is not the sole or principal purpose of the [complaint], but is only incidental thereto, only fees which are incurred in procuring the dissolution of the injunction itself are recoverable.'"
Bell v. Bell, 637 So.2d 1390, 1392 (Ala.Civ.App.1994) (quoting Luker v. Perry, 351 So.2d 591, 593 (Ala.Civ.App.1977) (citing McGraw v. Little, 198 Ala. 553, 555, 73 So. 915, 916 (1917))).
"`The right of action on [an injunction] bond is conditioned only upon a legal dissolution of the injunction. It matters not whether such dissolution comes upon a motion to dissolve or a hearing upon the merits.'"
Luker v. Perry, 351 So.2d at 593 (quoting Union Springs Tel. Co. v. Green, 47 Ala.App. 427, 431, 255 So.2d 896, 900 (1971)) (emphasis added).
Although we conclude that NationsCredit was not actually enjoined or restrained from doing anything by the terms of the TRO, we, nevertheless, affirm the trial court's award, on April 24, 2003, of attorney fees in the amount of $19,122.49 to NationsCredit because NationsCredit proved its entitlement to the fees based on the terms of the promissory note that Hunt signed. In the note, Hunt promised to pay "all costs of collection or securing or attempting to collect or secure this note, including a reasonable attorney's fee." A mortgagee is entitled to attorney fees for defending an action challenging the terms of a promissory note or a mortgage. See Taylor v. Jones, 290 Ala. 268, *83 276 So.2d 130, 133 (1973). The affidavits submitted by the attorney for NationsCredit in support of its attorney-fee request itemize the time spent in "researching the relevant legal issues, gathering the necessary facts, drafting and revising the submissions to the [trial] court, and preparing for and attending the October 30, 2002, hearing in opposition to [Hunt's] motion for preliminary injunction."
Although the trial court had not yet determined on April 24, 2003, when it awarded NationsCredit an attorney fee, that Hunt had been in default under the terms of the note at the time of the foreclosure and that Hunt had failed to establish that the foreclosure sale was invalid (see Part III of this opinion), it is apparent that when the trial court entered the summary judgment for NationsCredit the court concluded that there was no merit to Hunt's underlying claims. The attorney-fee award was, therefore, authorized under the terms of the note Hunt signed. Taylor v. Jones, supra. Hunt did not contest the amount or reasonableness of the fee awarded. We hold that the fee award was "`"`within the judicial discretion of the trial judge, who ha[d] close and intimate knowledge of the efforts expended and the value of the services rendered.'"'" Trustees Loan & Discount Co. v. Carswell, 435 So.2d 114, 117 (Ala.Civ.App.1983) (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.1978) (quoting other cases)).

III.
Hunt argues that, in opposition to the motion for a summary judgment by NationsCredit, she presented substantial evidence indicating that there were disputed issues of material fact, thus making the trial court's entry of the summary judgment error. Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
It is undisputed that on May 9, 1986, Hunt signed a promissory note, secured by a mortgage of residential property, payable to Robert C. Rice. The note states, in pertinent part:
"For value received, [Hunt] promises to pay to the order of [Rice], the principal sum of thirty five thousand and no/100 dollars ($35,000) with interest thereon at the rate of ten per cent per annum, the principal and interest payable as follows, namely: In monthly installments beginning on the ninth day of June, 1986, and on the ninth day of each month thereafter, the sum of three hundred seventy-six and 11/100 dollars ($376.11) and the balance of said principal sum payable on the ninth day of May, 2001."
In support of its motion for a summary judgment, NationsCredit submitted, among other things, the following evidentiary *84 material: two assignments of the Hunt note and mortgage, both dated January 30, 1987, and filed in the Madison Probate Court, one from Rice to Invest Co., and one from Invest Co. to Chrysler First Financial Services Corporation; the affidavit and deposition testimony of John H. Outlaw, the manager of Chrysler First and later the manager of NationsCredit's Huntsville, Alabama, office; notices to Hunt concerning the assignments of Hunt's note and mortgage; records indicating Hunt's loan payment history; a letter dated August 26, 2002, from Fairbanks Capital Corporation, the loan-servicing agent for NationsCredit, to Hunt, explaining that her loan indebtedness was $11,491.19 and had to be paid in certified funds within 30 days to avoid foreclosure, and a copy of the notice of foreclosure sale to be run in a local newspaper.
Outlaw testified that NationsCredit was the successor corporation to Chrysler First; that Chrysler First had paid Invest Co. $27,182.41 for the Hunt note and mortgage; and that Rice did not tell himand that he had no reason to believethat Hunt had received from Rice any amount other than the $35,000 that was recited on the face of the note. Outlaw stated that one of his employees had prepared an "Affidavit and Estoppel Letter" for Hunt to sign. Hunt signed the affidavit and estoppel letter in which she acknowledged that, on January 30, 1987, when the note was assigned to Chrysler First, "the present and correct principal balance of her note to Rice was $34,393.74."
In opposition to the motion, Hunt submitted, among other things, the deposition testimony of Rice, a cancelled check payable to her from Rice, dated May 9, 1986, in the amount of $23,354.87; a handwritten memorandum, which Rice identified as having been written by him, with the following notation:
"Face Amount: $35,000, 10%, 15 years
 Payment $376.11
Discounted to: $23,354.87"
Rice testified that, upon the first assignment of Hunt's note and mortgage, Invest Co. paid him $25,000.
The trial court concluded that there was no dispute that Hunt was in default under the terms of the note at the time of the foreclosure. Hunt presented no evidence to challenge the showing by NationsCredit that, at the time of foreclosure, she was in arrears under the terms of the note she had signed. Instead, Hunt asserted the defenses of failure (or partial failure) of consideration and lack of mutual assent, arguing to the trial court that, because Rice had given her as consideration for the note and mortgage only $23,354.87, rather than the $35,0000 recited in the note, she had repaid what, she says, was the loan amount at the time of the foreclosure. In support of that argument, Hunt directed the trial court's attention to Rice's deposition testimony, Rice's memorandum indicating that his loan to Hunt was "[d]iscounted to $23,354.87," and Rice's cancelled check, dated the day the note was signed, in the amount of $23,354.87.
"Rule 56(e), Ala.R.Civ.P., requires that a party opposing summary judgment show by admissible evidence that a genuine issue of material fact exists which requires resolution by a factfinder." Harrelson v. Community Fed. Sav. & Loan Ass'n, 540 So.2d 55, 57 (Ala.1989). NationsCredit argued, and the trial court apparently accepted the argument,[2] that the foregoing evidentiary submissions by Hunt were inadmissible for two reasons, namely: *85 that they violated the Statute of Frauds, see § 8-9-2(5) and (7), Ala.Code 1975, and that they violated the parol evidence rule. In addition, NationsCredit argued that, even if Hunt's evidentiary submissions were admissible, she could not assert the defenses against NationsCredit because NationsCredit was a holder in due course. We agree.
Even assuming that Hunt's evidentiary submissions were admissible and tended to show that Rice loaned her $23,354.87 instead of $35,000, thus stating either a defense of failure of consideration or lack of mutual assent, those defenses were, nevertheless, unavailing in a contest with NationsCredit because NationsCredit affirmatively established that it was a holder in due course of the note. "The protection given a holder in due course is awarded to the holder of a mortgage as well as the note which the mortgage secures." Hardy v. Gissendaner, 369 F.Supp. 481, 483 (M.D.Ala.1974), aff'd, 508 F.2d 1207 (5th Cir.1975).
NationsCredit submitted evidence that it took the note for value ($27,182.41), in good faith, and without notice of Hunt's failure-of-consideration or lack-of-mutual-assent defenses, thus entitling it to holder-in-due-course status. See § 7-3-302(a)(2), Ala.Code 1975. Hunt presented no evidence to the contrary. Instead, her attorney argued to the trial court that common sense dictated that a second assignee like Chrysler First (NationsCredit's predecessor corporation) must have been on notice that Rice had paid Hunt less than the $25,000 that Rice received from Invest Co. (the first assignee) because the assignments occurred during the first year of a 15-year loan with a face amount of $35,000, the borrower's payments on the loan were current, and, Hunt claimed, Rice was in no distress to sell the note at a discount. The trial court was apparently unwilling, as we are, to accept the factual and legal premises underlying that argument. As the Alabama Supreme Court stated in Spires v. Jones, 212 Ala. 117, 101 So. 753 (1924):
"`The mere fact that a note is purchased for an amount less than its face, or that an unusually large discount is accepted, is never of itself sufficient to charge the purchaser with notice of existing equities, unless the consideration is merely nominal. However, inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of bad faith, especially if the consideration is grossly inadequate.' 8 Corp. Jur. 508, § 717. This is, of course, a corollary to the general rule that negotiable paper may be bought and sold like any other chattel at its real or supposed value, and the transfer of such an instrument at a discount greater than the legal rate of interest does not deprive the transferee of the protection of a bona fide purchaser for value."
212 Ala. at 119, 101 So. at 754. In the absence of any evidence to refute the showing that NationsCredit was a holder in due course, we conclude that the trial court's implicit conclusion that it enjoyed that status was correct.
"Want of consideration is a defense to a suit on a note brought by a holder not a holder in due course. Until a defense is shown the issue of whether the holder is a holder in due course does not arise. When it is shown that a defense exists, and the plaintiff has raised the issue of his being a holder in due course in avoidance of the defense, he has the full burden of proof of showing by a preponderance of the evidence that he is a holder in due course `in all respects.'
"....

*86 "The burden of proof is that he must show by affirmative evidence that the note was taken for value, in good faith before maturity without notice of any defense against it."
Patterson v. First Nat'l Bank of Huntsville, 47 Ala.App. 98, 101, 251 So.2d 230, 232-33 (1971) (citation omitted) (construing Title 7A, § 3-306(c), Ala.Code 1940 (Recomp.1958) (corresponding provision now found at § 7-3-308(b), Ala.Code 1975)). Lack of mutual assent is also not a defense that can be asserted against a holder in due course. See Compton Co. v. Minolta Bus. Sys., Inc., 171 Ga.App. 272, 272-273, 319 S.E.2d 107, 108 (1984) (stating that lack of mutual assent "did not constitute a type of defense that could be asserted against a holder in due course, ... and it may not be asserted against the assignee").
In summary, we hold that Hunt and Richardson's appeal was timely with respect to the attorney-fee award; that the trial court was within its discretion in awarding the attorney fees it awarded; and that Hunt's evidentiary submissions aimed at proving a failure of consideration or a lack of mutual assent were useless against a holder in due course, a status that NationsCredit affirmatively established that it had.
The judgment of the trial court is affirmed.
MOTION TO DISMISS DENIED; AFFIRMED.
YATES, P.J., and THOMPSON, J., concur.
MURDOCK, J., concurs specially.
PITTMAN, J., concurs in the result, without writing.
MURDOCK, Judge, concurring specially.
I concur in the main opinion, including particularly Part I, holding that the trial court's interlocutory order awarding the attorney fee was not immediately appealable at the time it was entered and, therefore, that Hunt and Richardson's appeal from that order at the conclusion of the litigation was not untimely. I find it important to write separately, however, because NationsCredit has attempted in this case to rely upon this court's opinion in Niezer v. SouthTrust Bank, 887 So.2d 919 (Ala.Civ.App.2004), in support of its argument that the interlocutory order containing the attorney-fee award was immediately appealable. I concurred in the result reached in this court's opinion in Niezer, but I did so without writing a separate opinion, and now feel it necessary to explain the reason for that vote and why that vote is consistent with my vote in the present case.
In Niezer, this court stated as follows:
"The Supreme Court's ruling in its May 22, 2003, order is also consistent with federal precedent to the effect that attorney-fee matters are separate and distinct from matters going to the merits of a dispute and that an appeal may be taken from a final judgment as to either aspect of a case. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). We note that there is federal authority for the position that an order denying a party's request for an award of attorney fees is not appealable if a final judgment has not previously been entered on the merits of the case. See Sandwiches, Inc. v. Wendy's Int'l, Inc., 822 F.2d 707 (7th Cir.1987). However, we are bound by the decision of the Alabama Supreme Court denying Neal Niezer's petition for permissive review on the basis that he *87 had the right to appeal from the trial court's March 14, 2003, order denying his request for an award of attorney fees. See § 12-3-16, Ala.Code 1975 (`The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals.')."
887 So.2d at 923 (emphasis added). My vote concurring in the result in Niezer should not be understood as a vote in favor of either of two propositions that some might glean from the above-quoted passage, namely: (1) that any time an attorney-fee award is made it necessarily is appealable immediately and separately from the remainder of the case in which it is entered, and (2) that the holding in cases such as Sandwiches, Inc. v. Wendy's International, Inc., 822 F.2d 707 (7th Cir.1987), is in tension with our Supreme Court's decision in Niezer. I believe a proper reading of Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), Sandwiches, Inc., and Niezer leads to the conclusion that neither proposition is correct.
As the main opinion in the present case notes, a final judgment is
"`a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants." Tidwell v. Tidwell, 496 So.2d 91, 92 (Ala.Civ.App.1986.).'"
Turner v. Turner, 883 So.2d 233, 234 (Ala.Civ.App.2003) (quoting Dees v. State, 563 So.2d 1059, 1061 (Ala.Civ.App.1990)). I agree with the main opinion that, in Niezer, the entry of an order awarding attorney fees came only after the entry of a judgment on December 3, 2002, that effectively adjudicated all of the claims of all of the parties in that case.[3] If, as was held in Budinich, an otherwise final and appealable decision on the merits is not made otherwise merely because the recoverability or the amount of an attorney fee for the litigation remains to be determined in a subsequent order, it stands to reason that when that subsequent order is ultimately entered, it too must be separately appealable. That was the case as to the March 14, 2003, order denying an attorney-fee request in Niezer, and it was for this reason that I concurred in the result reached in that case. This would not necessarily be true, however, of an interlocutory order granting or denying an attorney fee. Thus it is that the United States Court of Appeals for the Seventh Circuit held in Sandwiches, Inc., that "[d]ecisions about fees are separate `final' decisions' ... only after there is a judgment on the merits that would be `final' but for the matter of fees. That may produce two final orders, independently appealable." Sandwiches, Inc., 822 F.2d at 711 (citing Mulay Plastics, Inc. v. Grand Trunk Western R. Co., 742 F.2d 369 (7th Cir.1984), and Palmer v. City of Chicago, 806 F.2d 1316 (7th Cir.1986)). Although this court's opinion in Niezer cited Sandwiches, Inc., as authority for the proposition that an order denying an attorney fee would not be appealable on an interlocutory basis, the rule articulated in Sandwiches, Inc., is not so limited.
Rule 54(b) provides that, in the absence of a determination under that rule directing the entry of a final judgment as to one *88 or more but fewer than all of the claims or parties,[4]
"any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
Rule 54(b) is in accord with the principle already noted that a final judgment is a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants." See Turner, 883 So.2d at 234.
Had the order containing the attorney-fee award in this case come at the conclusion of the litigation and after the entry of a final judgment on the merits, it would have amounted to a final judgment in its own right and would have been appealable. See Palmer v. City of Chicago, 806 F.2d 1316, 1318 (7th Cir.1986) (noting that an order containing an attorney-fee award coming at the conclusion of the litigation after a final judgment would be a final order in an "uncontroversial sense"); see also Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178. It did not, however, and therefore it is not appealable as a "final judgment." Thus, any effort to avoid the restrictions in our law stated in Rule 54(b) and reiterated in cases such as Turner must rest upon some other basis.
Rule 4(a)(1), Ala. R.App. P., references a number of types of orders that are appealable, including orders granting or denying injunctive relief. The order containing the attorney-fee award in this case is not an order granting or denying injunctive relief. It was, however, made in conjunction with such an order. It would be reasonable to conclude, therefore, that if the trial court's order addressing the interlocutory injunctive relief had been appealed and if the award of attorney fees had been a part of that same order, that award, itself, could be considered in that appeal. Even coming, as it did, in a separate written order entered by the trial court after the trial court's order denying interlocutory injunctive relief, the attorney-fee award nonetheless was ancillary to the injunctive-relief order. Thus, it could be argued that, had the injunctive-relief order itself been appealed, then so to could have been the order containing the attorney-fee award. See, e.g., Palmer, 806 F.2d at 1318 (holding that an order awarding attorney fees "pendant" to the entry of a preliminary injunction would have been appealable as a pendant order had it been appealed in time to be consolidated with the appeal of the preliminary-injunction order). The trial court's order pertaining to injunctive relief was not appealed, however.
That leaves a final possibility: recognizing the immediate appealability of the interlocutory order containing the attorney-fee award in this case on the basis of what is known in federal jurisprudence as the "collateral order doctrine." This doctrine, first recognized in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), has been the subject of much discussion and no small number of different formulations. See, e.g., 15A Wright & Miller, Federal Practice & Procedure § 3911 (2d ed.1992). *89 One conventional formulation of the doctrine has three elements: (1) the issues pertinent to the correctness of the interlocutory order must not overlap those in the underlying litigation; (2) the order must be final and definitive with respect to the matter it addresses, and not tentative; and (3) the appellant must show irreparable harm if the appellant is unable to immediately appeal the order. Palmer, 806 F.2d at 1318.
The collateral-order doctrine, however, has never been recognized by either this court or our Supreme Court as a matter of Alabama law. I am unwilling to consider recognizing the doctrine in the present case in part because of this fact and in part because, if we were to do so, we would be using the doctrine to bar an appeal of an interlocutory order, rather than to make possible such an appeal, a use to which I have not seen the doctrine put even in existing federal precedents. Further, even if we were to recognize the doctrine in the present case, it would appear that none of its three elements are present in this case.
NOTES
[1] As the surety on Hunt's bond, Richardson appeals from the trial court's award of damages, i.e., attorney fees, on the bond.
[2] The trial court's summary judgment for NationsCredit stated no grounds for its ruling.
[3] The request for an attorney fee at issue in Niezer was not made until after the entry of the December 3, 2002, judgment. Even if that request had been pending at the time of the entry of the court's December 3, 2002, judgment in Niezer, however, that judgment was nonetheless a final judgment. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (holding that a decision on the merits is a final judgment for purposes of appeal as a matter of federal law even when the recoverability or amount of attorney fees for the litigation remains to be determined).
[4] I do not intend by this reference to suggest any consideration on my part of whether an interlocutory order awarding attorney fees such as in the present case would be an appropriate order for a "determination" directing the entry of a final judgment under Rule 54(b).